

DMP:SK/AFM/MTK
F. #2016R02228

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 12 2020 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

ALEKSANDR ZHUKOV,
    also known as "Alexander
    Zhukov" and "ibetters,"

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 18-633 (S-1) (ERK)
(T. 18, U.S.C., §§ 981(a)(1)(C),
982(a)(1), 982(b)(1), 1343, 1349,
1956(h), 1957(a), 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p); T. 28, U.S.C.,
§ 2461(c))

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Superseding Indictment, unless otherwise indicated:

1.     Individuals and businesses ("publishers") were able to provide free content on the internet—such as websites, search engines, translation services, video playback services and global mapping services—because advertisers paid for the opportunity to show advertisements (sometimes referred to as "ads") alongside that content.

2.     The digital advertising industry was made up of a chain of specialized businesses. Publishers commonly used entities called supply-side platforms ("SSPs") to conduct auctions that sold the advertising space on their sites. These auctions commenced as soon as an internet user accessed a website and concluded within milliseconds, before the webpage displayed to the user. Businesses seeking to promote their goods and services

online ("brands") commonly used entities called demand-side platforms ("DSPs") to bid in these auctions and thereby had their advertisements placed on webpages that real human internet users were browsing. Brands commonly paid for advertising on a lump-sum basis, and publishers commonly received payment based on how many times users clicked on or viewed advertisements (sometimes referred to as "impressions"). The entities in between the brands and the publishers—the DSPs, the SSPs and the intermediaries ("ad networks") that connected SSPs with publishers—charged fees along the way.

3. The defendant ALEKSANDR ZHUKOV, also known as "Alexander Zhukov" and "ibetters," used sophisticated computer programming and infrastructure spread around the world to exploit the digital advertising industry through fraud. ZHUKOV represented to others that he ran a legitimate ad network that delivered advertisements to real human internet users accessing real internet webpages. In fact, ZHUKOV faked both the users and the webpages: he and his co-conspirators programmed computers that they had rented from commercial datacenters in the United States and elsewhere to load advertisements on fabricated webpages, via an automated program, in order to fraudulently obtain digital advertising revenue.

I. <u>The Defendant</u>

4. ZHUKOV was a citizen of the Russian Federation. ZHUKOV served as the chief executive officer of Media Methane. Media Methane was a private corporation owned by ZHUKOV with offices in the Russian Federation and the Republic of Bulgaria that purported to be an ad network. It purported to assist customers with delivering advertisements to real human internet users via its ad network.

5.   ZHUKOV had multiple co-conspirators who assisted with the scheme by, among other things, working on technical, programming, business, administrative and coordination aspects of the scheme.

## II.   The Scheme to Defraud

6.   In or about September 2014, ZHUKOV and his co-conspirators launched a digital advertising fraud scheme under the guise of operating Media Methane. Media Methane had business arrangements with other advertising networks that enabled it to receive payment in return for placing advertisements with publishers on behalf of those advertising networks. Rather than place these advertisements on real publishers' webpages as promised, however, ZHUKOV and others rented thousands of computer servers located at commercial datacenters in the United States and elsewhere, and used those datacenter computer servers to simulate humans viewing ads on fabricated webpages. By these means, ZHUKOV and his co-conspirators caused the datacenter computer servers to load fabricated webpages, offer up the advertising space on the fabricated webpages for bidding and load advertisements on the fabricated webpages through an automated computer program. This activity (the "fraudulent ad traffic") was not viewed by any real human internet users.

7.   ZHUKOV and others programmed the datacenter computer servers to load fabricated webpages—that is, mostly blank webpages containing a blank space for an ad—that purported to be located at the domains of well-known publishers. ZHUKOV researched lucrative domains to fabricate, deliberately targeting domains for businesses in the United States. In this way, ZHUKOV and his co-conspirators fabricated (or "spoofed") hundreds of thousands of webpages distributed across thousands of domains associated with

online publishers, including the domains of thousands of businesses in the United States and multiple businesses in the Eastern District of New York.

8.  ZHUKOV and his co-conspirators programmed the datacenter computer servers to simulate the internet activity of real human internet users when loading the fabricated webpages, in order to deceive SSPs and others in the digital advertising industry and to evade fraud detection software widely used in the industry. They developed programming code that caused the datacenter computer servers to operate an automated browser, click on online advertisements a randomly determined number of times, simulate a mouse moving around and scrolling down a webpage, control and monitor video playback, including the length of time the video was watched, and falsely appear to be signed into popular social media services like Facebook. They also developed programming code designed to circumvent fraud detection software deployed by certain U.S. cybersecurity firms.

9.  To further deceive SSPs and others in the digital advertising industry into believing that the datacenter computer servers were genuine human users, ZHUKOV leased hundreds of thousands of Internet Protocol ("IP") addresses from various IP address leasing companies and assigned multiple IP addresses to each of the datacenter computer servers. ZHUKOV and his co-conspirators then created false entries for the datacenter computer servers in a global register of IP addresses. Several of the false IP address registry entries misappropriated or mimicked the corporate identities of major U.S. internet service providers, including at least one provider with offices in the Eastern District of New York, an entity the identity of which is known to the Grand Jury. Several of the false IP address

registry entries incorporated false usage and location information, ascribing a diverse set of cities and states to the leased IP addresses.

10. In these ways, ZHUKOV and his co-conspirators sought to make it appear to SSPs and others that the computers in question belonged to real human internet users located in homes and businesses around the country, rather than being located in commercial datacenters.

11. ZHUKOV and his co-conspirators thus created the illusion that real human internet users were visiting real internet webpages. ZHUKOV and others solicited bids on the opportunity to show advertisements to those purported users. In response, DSPs bid on those opportunities. The winning DSPs made payments to SSPs (using money provided by brands) in return for the purported impressions, and the SSPs transferred those payments to advertising networks to be passed along the chain of intermediaries described above.

12. Over the course of the scheme, ZHUKOV and his co-conspirators falsified billions of ad impressions. Hundreds of brands and ad agencies around the world, including many in the United States and at least one with offices in the Eastern District of New York, an entity the identity of which is known to the Grand Jury, collectively paid more than $7 million in advertising fees for fraudulent ad traffic. ZHUKOV and his co-conspirators, in turn, reaped millions of dollars in revenue.

13. ZHUKOV re-invested some of the proceeds from the scheme to perpetuate the fraud and concealed other proceeds by transferring them to and through multiple corporate bank accounts located around the world.

14. Following public disclosure of the scheme by researchers at a private cybersecurity firm based in New York City on or about December 20, 2016, ZHUKOV and his co-conspirators reacted by attempting to delete evidence, including communications exchanged between and among co-conspirators.

III. The Victims

15. The scheme victimized numerous players in the digital advertising industry.

16. The scheme victimized brands who sought opportunities to advertise their goods and services to real human internet users but lost those opportunities and instead paid for advertisements automatically loaded by computers.

17. The scheme victimized online publishers by creating false and fraudulent webpages purporting to be located at real publishers' domains, stealing the publishers' identities and misappropriating those identities for a fraudulent purpose, undermining the reputation and credibility of those publishers in the ad market and reducing the revenues that the actual publishers would otherwise earn.

18. The scheme victimized the SSPs and DSPs ("ad platforms") by causing them to receive false information indicating that a real human user had viewed an advertisement on a real website.

19. The scheme victimized internet service providers by stealing their corporate identities for the purpose of registering IP addresses with false information.

## COUNT ONE
(Wire Fraud Conspiracy)

20. The allegations contained in paragraphs one through 19 are realleged and incorporated as if fully set forth in this paragraph.

21. In or about and between September 2014 and December 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ALEKSANDR ZHUKOV, also known as "Alexander Zhukov" and "ibetters," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud brands, ad platforms and others in the digital advertising industry, and to obtain money and property from brands, ad platforms and others in the digital advertising industry by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: electronic communications to computers and servers in the United States and elsewhere, emails and other online communications and monetary transfers, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
(Wire Fraud)

22. The allegations contained in paragraphs one through 19 are realleged and incorporated as if fully set forth in this paragraph.

23. In or about and between September 2014 and December 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ALEKSANDR ZHUKOV, also known as "Alexander Zhukov" and

"ibetters," together with others, did knowingly and intentionally devise a scheme and artifice to defraud brands, ad platforms and others in the digital advertising industry, and to obtain money and property from brands, ad platforms and others in the digital advertising industry by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: electronic communications to computers and servers in the United States and elsewhere, emails and other online communications and monetary transfers.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT THREE
(Money Laundering Conspiracy)

24.     The allegations contained in paragraphs one through 19 are realleged and incorporated as if fully set forth in this paragraph.

25.     In or about and between September 2014 and December 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ALEKSANDR ZHUKOV, also known as "Alexander Zhukov" and "ibetters," together with others, did knowingly and intentionally conspire to:

(a)     transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, (i) with the intent to promote the carrying on of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States

Code, Section 1956(a)(2)(A); and (ii) knowing that the monetary instruments and funds involved in the transportation, transmission and transfer represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1956(a)(2)(B)(i); and

(b) engage in one or more monetary transactions within the United States involving property of a value greater than $10,000 that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the funds were the proceeds of some unlawful activity and were in fact proceeds of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT FOUR
(Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity)

26. The allegations contained in paragraphs one through 19 are realleged and incorporated as if fully set forth in this paragraph.

27. In or about and between September 2014 and December 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ALEKSANDR ZHUKOV, also known as "Alexander Zhukov" and "ibetters," together with others, did knowingly and intentionally engage in one or more monetary transactions within the United States involving property of a value greater than

$10,000 that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the funds were the proceeds of some unlawful activity and were in fact proceeds of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1957(a), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE AND TWO

28.     The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged in Counts One and Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

29.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

        (a)     cannot be located upon the exercise of due diligence;

        (b)     has been transferred or sold to, or deposited with, a third party;

        (c)     has been placed beyond the jurisdiction of the court;

        (d)     has been substantially diminished in value; or

        (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable

property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS THREE AND FOUR

30. The United States hereby gives notice to the defendant that, upon his conviction of either of offenses charged in Counts Three and Four, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

31. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

*Syed Arab Ali Salzposh*
FOREPERSON

*Richard P. Donoghue*
RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2016R02228
FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

ALEKSANDR ZHUKOV, also known as "Alexander Zhukov" and "ibetters,",

Defendant.

# SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1), 982(b)(1), 1343, 1349, 1956(h), 1957(a), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*Syed Aub Ali Salzposh*                              *Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* \_\_\_\_\_

_____
                                                                                 *Clerk*

*Bail, $* _____

*Saritha Komatireddy, Assistant U.S. Attorney (718) 254-6054*