UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------x

UNITED STATES OF AMERICA,

       -against-

ALEKSANDR ZHUKOV,

       Defendant.

------------------------------------------x

**ORDER**
18-CR-0633(EK)

ERIC KOMITEE, United States District Judge:

      This case is scheduled for jury selection and trial on September 21, 2020. On that date, Defendant – who is of course presumed innocent – will have been incarcerated pending trial for more than twenty months at the Metropolitan Detention Center here in the United States, where he requires the help of an interpreter to understand the primary language. Prior to that, he was incarcerated for approximately seventy-three days in Bulgarian prison, pending extradition here.

      The Court is cognizant of Defendant's rights to a speedy trial under the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. § 3161. *See generally Barker v. Wingo*, 407 U.S. 514, 531-32 (1972) (identifying factors relevant to Sixth Amendment speedy-trial analysis: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and prejudice to the defendant," which includes "oppressive pretrial incarceration"). The Court previously denied

1

Defendant's prior motions to dismiss the case and to be released on bond, and the Court previously adjourned trial over Defendant's objection. ECF Nos. 100, 102. Those analyses must of course be updated periodically as the length of pre-trial incarceration continues to grow.

The Court is also acutely aware, however, that this country, state, and city are still fighting a public health problem of historic proportions. New York City was the "epicenter" of the COVID-19 pandemic earlier this year,[1] and it is not hyperbole to state that the virus spread through the state and city like a wildfire. As of August 12, 2020, the city was reporting that the pandemic had infected over 225,000 citizens of New York City and killed more than 23,000.[2] The pandemic has been called the "greatest health care crisis in a century."[3]

At this moment, according to the state governor and New York City mayor and the underlying data, the wildfire appears (thankfully) to have subsided meaningfully in this area.

---

[1] Ben Chapman & Jimmy Vielkind, *New York City Faces Challenges as U.S. Epicenter for Coronavirus*, WALL ST. J. (Mar. 23, 2020), https://www.wsj.com/articles/new-york-city-faces-challenges-as-u-s-epicenter-for-coronavirus-11584983498.

[2] CITY OF NEW YORK, COVID-19: DATA, https://www1.nyc.gov/site/doh/covid/covid-19-data.page (last visited Aug. 12, 2020, 1:10 PM) (the latter figure includes "probable deaths").

[3] CITY OF NEW YORK, TRANSCRIPT: MAYOR DE BLASIO HOLDS MEDIA AVAILABILITY ON COVID-19 (Apr. 13, 2020), https://www1.nyc.gov/office-of-the-mayor/news/252-20/transcript-mayor-de-blasio-holds-media-availability-covid-19.

The reported rates of infection, positive test percentage, and death have all decreased significantly from their highs earlier this year. *See* CITY OF NEW YORK, COVID-19: DATA, https://www1.nyc.gov/site/doh/covid/covid-19-data.page (last visited Aug. 12, 2020, 1:10 PM) (as of this filing on August 12, 2020, New York City reports that daily cases have dropped from 6,377 on April 6 to 169 on August 7, daily deaths are down from 598 on April 7 to four on August 7, and the city-wide positivity-rate has declined from 71.3% on March 28 to 1.3% on August 7).

These trends could of course change rapidly, and so the assessment of whether it will be possible to undertake a multi-week trial in September is a moving target. Some epidemiologists have forecasted that a "second wave" of coronavirus cases could arrive this fall.[4] Although experts disagree on the likelihood of a second wave,[5] a decision to order a brief delay in the trial date could end up necessitating a

---

[4] JOHNS HOPKINS MED., *First and Second Waves of Coronavirus* (June 24, 2020), https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/first-and-second-waves-of-coronavirus (anticipating a second wave "before fall"); Lena Strazewski, *Harvard epidemiologist: Beware COVID-19's second wave this fall*, AMA, (May 8, 2020) https://www.ama-assn.org/delivering-care/public-health/harvard-epidemiologist-beware-covid-19-s-second-wave-fall (predicting that "fall will be very much like the spring," with cases peaking in December).

[5] Emma Farge, *WHO says COVID-19 pandemic is 'one big wave', not seasonal*, REUTERS, (July 28, 2020) https://www.reuters.com/article/us-health-coronavirus-who-idUSKCN24T16U (reporting that some WHO officials predict the pandemic will be "one big wave" that may worsen when combined with "normal seasonal influenza cases").

longer delay if an uptick in cases makes it even more difficult to gather in the courthouse in the coming months.

A status conference in this case is set for Monday, August 17. There the Court will need to assess, with the input of the parties, whether the September 21 trial date should hold considering the complex imperatives set forth above. That determination may depend on the following factors, among others, which the Court hereby requests that the parties come prepared to address:

1. *Trial Preparation.* The Metropolitan Detention Center, in its efforts to manage the spread of the virus, has imposed limitations on counsel's ability to meet with clients, and has attempted to accommodate remote meetings to make up (in part) for those limitations. Defense counsel should advise the Court regarding the progress of trial preparation efforts to date – the extent to which they have been attempted, and to which they have been successful – and identify problems they anticipate going forward. Counsel should also provide a bottom-line assessment of whether they believe they can, given current limitations, prepare adequately for a September trial.

2. *Witness Travel.* The parties should be prepared to summarize any difficulties associated with bringing to Court witnesses who would be traveling from a state on the New York State travel advisory list or a country subject to a Presidential Proclamation suspending and limiting entry to the United States, and witnesses who are at increased risk of severe illness from COVID-19.

3. *Length of Trial.* The length of trial is of course a factor relevant to the risk of transmission. Though the Court has engaged in substantial planning to maximize social distancing for the parties, attorneys, jurors, and court personnel, there are limits to what can be achieved in a confined space. The parties should, accordingly, update the projections they made at the

last status conference regarding the length of trial, including jury selection, jury addresses, the prosecution's case-in-chief, and the defense case.

Also at the last status conference, the government advised that they had proposed certain stipulations regarding the authenticity of documentary evidence and the accuracy of translation of certain Russian- and Bulgarian-language records in an effort to shorten the trial. The government further advised that the defense had so far declined (as is its right) to enter any such stipulations. *See Brown v. Artuz*, 124 F.3d 73, 77 (2d Cir. 1997) (defendants have a constitutional right to decide "what stipulations should be made"). As this appears to be a material factor in projecting the length of trial, the parties should advise the Court whether the parties have reached agreement on any stipulations in the intervening period.

4. *Sentencing Guidelines*. The length of time Defendant is facing is one factor to be considered in the analysis of Defendant's speedy trial rights. *Cf. Paulin v. Grady*, No. 14-CV-10128, 2015 WL 11988976, at *3 (S.D.N.Y. Dec. 22, 2015) ("As to the first *Barker* factor, length of delay, courts evaluate delays not just in absolute terms but also in relation to the overall sentence being served by the petitioner."), *report and recommendation adopted*, 2016 WL 4509068 (S.D.N.Y. Aug. 24, 2016). The government provided a projected guidelines range in its letter on April 11, 2020. The government should update that (non-binding) calculation as necessary, and explain the underlying analysis, based on facts known to it now.

5. *The Positions of the Parties and Counsel on Adjournment.* The parties should advise the Court whether they consent to an adjournment of the trial date in light of the extraordinary circumstances presented by the pandemic. Regardless of their position on that question, Defendant and the attorneys for both parties should also feel free – though not at all required – to advise the Court of special concerns they may have about proceeding as scheduled. Any submissions containing health information may of course be submitted in advance of the

conference *under seal*. *See United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995).

SO ORDERED.

/s Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: August 12, 2020
       Brooklyn, New York