Andrew J. Frisch
Partner

212-344-5400
afrisch@schlamstone.com

SCHLAM STONE & DOLAN LLP

26 Broadway, New York, NY 10004
Main: 212 344-5400   Fax: 212 344-7677
schlamstone.com

August 16, 2020

*By ECF and Email*
The Honorable Eric Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  United States v. Aleksandr Zhukov, 18-CR-633 (EK)

Dear Judge Komitee:

On behalf of Aleksandr Zhukov in the above-referenced case, we submit this letter as a courtesy to the Court to preview answers to some questions asked in the Court's order of August 12, 2020.

The current circumstances put the defense in an untenable position.  On the one hand, Mr. Zhukov wants an immediate trial both because conditions at the Metropolitan Detention Center ("MDC") were abysmal before the pandemic and have only grown worse; he has been in custody for almost two years half a world away from home and family; and because he (and his counsel) believe that his prospective defense is strong if not unassailable.  On the other hand, the pandemic continues to present a set of intractable problems.  We believe that dismissal of the case is the only viable option consonant with the effect of the pandemic on Mr. Zhukov's rights to counsel, a speedy trial, due process, a properly-constituted petit jury, and fundamental fairness.  Alternatively, Mr. Zhukov should be released on monitored bond and lodged at a local hotel at government expense.

Mr. Zhukov's case presents an apparently unique set of circumstances:  a foreign national (1) extradited to the United States on the then-reasonable assumption that he would be afforded the full panoply of this country's then-existing constitutional protections without undue delay; (2) imprisoned half a world from his home and family presumably for only the time necessary for the United States to prove the truth of its allegations.  Whatever the necessity of new protocols that may restrict our daily lives during a pandemic, the usual guardrails against unjust deprivation of liberty are not unfortunate collateral damage that may be tweaked in service to a higher priority; in the United States, at least historically, they *are* the higher priority.

Even before onset of the pandemic, Mr. Zhukov's defense presented special challenges. After counsel complained to the MDC about undue temporal and technological impairments on Mr. Zhukov's ability to review the government's very voluminous digital discovery, the MDC told counsel that he should sit with Mr. Zhukov in the MDC visiting room and review the discovery with him on counsel's laptop. Defense counsel did so; before onset of the pandemic in March 2020, counsel sat with Mr. Zhukov and a laptop on fourteen separate days for about four hours each day reviewing the government's discovery. The review stopped when the MDC barred visiting, not because the review was complete.[1] Now, six months later, while the government has had the continuing opportunity to refine its presentation, Mr. Zhukov's defense has crept along at a snail's pace. While Mr. Zhukov and counsel have availed themselves of the attorney calls which the MDC permits (upon request, and which can last up to 60 or 90 minutes), it is impossible to complete review of the digital discovery telephonically.

Even if visiting at the MDC were to resume today (no date for resumption of visiting has been announced), Mr. Zhukov and counsel will have to devise a way to remain socially distant while viewing discovery together on a laptop, presumably requiring special accommodation for adequate time to do so. Under normal circumstances, defense counsel would travel to the MDC for daily visits of virtually unlimited duration without advance permission; today, they must request calls in advance of very limited duration. Even then, a call deemed "urgent" itself typically requires at least two days of advance notice and can even then be unilaterally canceled by the MDC, requiring that the protocols for requesting an "urgent" call start anew. Video-conferencing is available, but resources are limited and must be shared, as with resources for attorney calls, among a significant subset of the MDC's 1,600 or so detainees.

Meanwhile, the participants in Mr. Zhukov's prospective trial are guinea pigs in new and untested protocols. Though in good health, lead defense counsel is in his mid-60s; fatigue and susceptibility to or actual illness have been attendant each of his trials in younger years, even when the world was not preoccupied with potentially lethal airborne droplets. One of Mr. Zhukov's other lawyers shares domicile with an immunodeficient relative. All of the lawyers and all prospective jurors necessarily have other people in their lives from whom the virus can be caught or to whom it can be spread and will journey to and from court at least in part via mass transit. We are all potential carriers and recipients. The apparent dissipation of the virus in New York City

---

[1] Mr. Zhukov has made a substantial dent in but has not completed review of hundreds of thousands of lines of internet chats and emails produced in multiple excel sheets, multiple gigabytes of computer and digital device account records, data extractions from electronic devices, including cell phones and laptops, hundreds of pages of foreign bank account records, and terabytes of online-traffic data.

is heartening, but hardly conclusive; other parts of the country are now paying dearly for believing that the coast was clear.

Mr. Zhukov's custody compounds the challenges. He is at greater risk of illness solely by virtue of the fact of his confinement. He is in regular contact with ever-rotating sets of officers and other inmates from whom he cannot socially distance. Mr. Zhukov is himself both a potential victim and carrier of the virus. On information and belief, at least one government witness (and perhaps as many as three or more) are also in custody, increasing the level of difficulty.

Rather than tackle a Rubik's Cube of logistical challenges, where even the appearance of a solution may prove to be a deadly illusion, our principles command fealty to the presumption of innocence, not the government's right to try to prove its case. To be clear, Mr. Zhukov wants absolutely no more delay: but he should not have to choose between prolonging his already extended detention and rushing into trial where he and his counsel are guinea pigs in new protocols without sufficient time and an adequate way to continue preparation.

Alternatively, if the case is not dismissed, the Court should reconsider releasing Mr. Zhukov on bond and require the government to fund Mr. Zhukov's hotel and subsistence. Mr. Zhukov is not charged with any crime involving violence, firearms, controlled substance, exploitation of minors, or even official corruption. Instead, while we do not mean to trivialize the importance of any federal case, the victims here are commercial Internet advertisers like Doritos; this is not a case that calls for detention. More, by the government's own acknowledgment in its indictment, the charged conduct ended almost four years ago, two years before Mr. Zhukov's arrest. The government cannot have it both ways; if it insists on trying an extradited foreign national notwithstanding a global pandemic, it must acknowledge reality and permit him to be at liberty and more readily available to his lawyers.[2] If not, the case should be dismissed.

We appreciate the novelty of these issues and the Court's efforts to manage them. The solution, however, is clear. We must fiercely protect the rights of extradited pre-trial detainees even at the expense of the government's right to proceed. Consistent with our fundamental principles, we cannot require a foreign national, in this country on the government's warrant to answer for a non-violent crime, to choose between an overdue trial and exercise of his constitutional rights as they were intended and have

---

[2] During the pandemic, defense counsel has met with clients in his firm's large conference room and has been able to use a large screen at one of the room to share images.

always applied. We need to send him home today or, alternatively, give him a substitute home at liberty that keeps him safe and healthy and affords him a meaningful opportunity to continue preparation for trial.

Respectfully submitted,

/s/ Andrew J. Frisch
Andrew J. Frisch

*Of Counsel:*
Abraham Rubert-Schewel
Dami Animashaun


cc: All Counsel