

U.S. Department of Justice

United States Attorney
Eastern District of New York

271 Cadman Plaza East
Brooklyn, New York 11201

SK/MTK/AFM
F. #2016R02228

September 30, 2020

By ECF

The Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: United States v. Aleksandr Zhukov et al.
     Criminal Docket No. 18-633 (S-1) (EK)

Dear Judge Komitee:

  The government writes in response to the Court's order of September 25, 2020, directing the government to consult with personnel at the Bureau of Prisons ("BOP") and indicate its position on the defendant's proposed order, see ECF No. 130. There are multiple options available to the defendant, other than those in the proposed order, that make the proposed measures unnecessary. The government sets forth below the information it has learned from conferring with the BOP.

  The government spoke with legal counsel at the Metropolitan Detention Center ("MDC") and was advised that providing a laptop to the defendant for use in his cell would create a serious security risk, for the reasons set forth in the submission filed by the government on behalf of the BOP in United States v. Tavarez, No. 19-cr-690 (KPF) (S.D.N.Y. September 25, 2020), attached hereto as Exhibit A.[1]

  BOP counsel further advised the government that the alternative of allowing the defendant to use a laptop in another, monitored location (such as a visiting room) would not pose such a risk, but would interfere with movement restrictions that MDC has put in place as a result of the pandemic: the MDC is controlling infection rates, in part, by keeping inmates in distinct cohorts, and bringing the defendant to the visiting room would mean that he might encounter inmates from other cohorts. Similarly, giving the defendant access to

---

[1] As of this writing, litigation is ongoing in United States v. Tavarez, which the defendant cites in his proposed order.

his cellblock computers for more than the allotted 90 minutes per day would result in the defendant potentially encountering inmates in other cohorts.

The defendant has several other ways to review the government's discovery material that do not raise the issues outlined above. As described at the last status conference, the defendant can review discovery material with his counsel during in-person attorney visits at the MDC, where the defendant and counsel would be separated by a plexiglass screen; counsel and the defendant can have video-teleconferences, which can last up to two hours and permit counsel to "screen-share" with the defendant; and counsel can meet with the defendant at the United States Marshals cellblock located in the courthouse, as set forth in the government's prior letter of September 2, 2020, see ECF No. 119. Further, the defendant can use the discovery computers in his housing unit to review the many discovery items that are in PDF format.

Respectfully submitted,

SETH D. DuCHARME
Acting United States Attorney

By: /s/
Saritha Komatireddy
Michael T. Keilty
Alexander Mindlin
Assistant U.S. Attorneys
(718) 254-7000

cc: Andrew Frisch, Esq. (by ECF)
Abraham Rubert-Schewel, Esq. (by ECF)

# EXHIBIT A



**U.S. DEPARTMENT OF JUSTICE**
**Federal Bureau of Prisons**
*Metropolitan Correctional Center*

*150 Park Row*
*New York, New York 10007*

September 25, 2020

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
Thurgood Marshall United
States Courthouse
40 Foley Square
New York, NY 10007

      **Re:**      <u>United States v. Ariel Tavarez, *et. al.*</u>
                  *19 Cr. 690 (KPF)*

Dear Judge Failla:

      We write in response to your August 25, 2020 Order directing representatives from the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn"), and the Metropolitan Correctional Center in New York, New York ("MCC New York") to advise the Court regarding each institution's provision of access to e-discovery within the facilities. Specifically, the Court has inquired about the number of e-discovery computers available and operable in each facility, whether particular programs are compatible with the e-discovery computers, whether facilities are available to store and charge laptop computers or tablets in each housing unit, and whether and what security risks are presented by the introduction of laptop computers or tablets for e-discovery for inmates in custody.

      Both facilities are committed to provide inmates detained therein ample and sufficient access to electronic discovery. Electronic discovery may be provided on CDs or on non-writeable hard drives. At present, inmates may review electronic discovery during out of cell time every day of the week, during separate, designated times in the law library,[1] and during attorney-client visits, phone calls, and/or video teleconferences (VTCs) with counsel.

      Both facilities have been provided with e-discovery computers by the Bureau of Prisons ("BOP"). Each electronic discovery ("e-discovery") workstation has a standardized "image"—*i.e.*, every e-discovery computer in the BOP has the same capabilities. The standard workstation has been developed to comply with secure BOP and Department of Justice ("DOJ") information security policies and procedures, and configured to permit inmates to review electronic discovery, but not for general data processing. Each discovery computer is loaded with Adobe Reader and the VLC Media Player. Microsoft Word documents are viewable, and other document types—*e.g.*, .html—should be converted to PDF so they are viewable.

---

[1] At present, as part of COVID-19 mitigation procedures, MCC New York is only allowing inmates to review discovery on the housing unit, rather than in the law library.

MDC Brooklyn currently has forty-five (45) e-discovery computers provided by the BOP. Each general population housing unit has two (2) discovery computers accessible to inmates. The Special Housing Unit ("SHU") has one (1) discovery computer available for inmate use. Each general population housing unit can accommodate up to 120 inmates, but generally will not be maintained at capacity. In general, during the COVID-19 pandemic, inmates are let out in smaller groups—not more than 10 to 30—at a time, greatly improving the ratio of inmates to functional computers.

At MDC Brooklyn, additional discovery computers are located in the West Visiting Room, East Visiting Room, West Law Library and East Law Library. An audit was conducted in June, 2020, and as of June 15, 2020, all discovery computers were accounted for, and replaced if necessary. As of the date of this writing, all discovery computers are functional. If and when a discovery computer is rendered in-operable, the computer services department should be immediately notified to make necessary repairs or replacements.

MCC New York currently has twenty-one (21) e-discovery computers within the facility. There is one (1) discovery computer within each general population housing unit, and as of the date of this writing, each discovery computer is operable. Each general population housing unit, on average, houses 80 inmates. In addition, there are a total of ten (10) discovery computers located in the attorney conference rooms on specific floors in the institution. In general, during the COVID-19 pandemic, inmates are let out in smaller groups—not more than 10 to 30—at a time, greatly improving the ratio of inmates to functional computers.

MDC Brooklyn and MCC New York are committed to continuing to provide access to discovery materials for inmates detained at these facilities, while simultaneously accounting for various security and safety concerns. As noted above, each facility allows inmates to retain legal materials in their possession, to include paper materials, up to 150 CDs, and where approved, hard drives. Each facility provides its population time to review electronic discovery independently, and with counsel. Both facilities are now open and offering legal visitation, and both facilities permit defense counsel to bring a laptop and/or hard drive to a legal visit to review electronic discovery directly with the client.

However, the BOP's Central Office issues guidance and policy relating to what items are generally permitted into Bureau institutions. Program Statement 1237.16, <u>Information Security</u>, acknowledges inmates may receive certain electronic media under special conditions. Such media may be accepted only from the inmate's legal representative, must be read-only, must be approved by the local CEO (Warden), and used only on workstations designated for e-discovery that are configured to exclusively provide read-only access. Electronic formats are audio tapes, audio discs, CD-ROMs, DVDs, thumb drives, or other formats approved by the CEO as resources permit. The Central Office may also approve additional technology as formats evolve. *See* P.S. 1237.16, at p. 45. Policy also provides that electronic devices that interfere, or can be configured to interfere, with information systems or a facility's operation are prohibited, including but not limited to: cell phones, wireless computing devices, and wireless peripherals. *See id.* at page 45. As such, a laptop or tablet is currently defined as contraband material by national policy.

Introduction of laptop computers or tablets pose security concerns independent of whether or not the device is capable of sending or receiving information. Of course, there is always the concern that an inmate has the technological prowess to configure an electronic device to render it capable of communicating with the general public, which an inmate can use to continue engaging in illicit behavior, threaten the general public, plan an escape, or plan harm within the facility.

Even if the device is not used to send or receive information, there are numerous other safety concerns. To wit, laptops and tablets—or parts thereof—can be used as body armor, as a weapon (both the glass screen and the entire tablet itself, or as a mechanism by which to conceal contraband. Inmates at both facilities have often tampered with provided e-discovery computers to make weapons or tattoo guns, for example. The charging cords can be used for illicit tattooing, to start a fire, or for other prohibited activities. In addition, these laptops or tablets can be reconfigured in other dangerous and hazardous ways—*e.g.*, to detonate an explosive or incendiary device.

There are also security and safety concerns regarding the information itself. If an inmate possesses his or her discovery in electronic format, he or she may be pressured by other inmates to produce the discovery to determine whether or not the individual is cooperating. Inmates may also steal the discovery productions of other inmates.

Finally, in addition to safety and security concerns, there are logistical challenges presented by the introduction of laptops computers and tablets as well. Housing units have limited electrical outlets, and no real space available to charge the electronic devices—especially were each inmate to possess one. Also, BOP staff are charged with accounting for an inmate's property when they arrive at and depart each institution. Accountability of electronic materials would be difficult. BOP staff would not be equipped to repair or reproduce a lost or damaged device.

For the abovementioned safety, security, and logistical reasons, laptops or tablets should not be introduced into the secure confines of either facility for each inmate to possess. However, the institutions remain committed to providing avenues for electronic discovery review that are equitable and safe. We trust this has been responsive to the Court's concerns. Please do not hesitate to contact us with further questions or concerns.

    Respectfully submitted,

    /s/

    Nicole McFarland
    Supervisory CLC Attorney
    MCC New York

    /s/

    Holly Pratesi
    Senior Staff Attorney
    MDC Brooklyn