```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------x

UNITED STATES OF AMERICA
                                              AMENDED ORDER
        -against-                             18-CR-633(EK)

ALEKSANDR ZHUKOV,

              Defendant.

---------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Defendant Zhukov was before the Court (telephonically) for a status conference on October 21, 2020, to discuss the defense's ongoing efforts to prepare for his upcoming trial. Jury selection is currently scheduled to begin on November 23, 2020, and the parties predict that trial will take two to three weeks. Familiarity with the Court's prior orders in this case — relating to bail, discovery, and other issues — is assumed. In Part I, below, the Court memorializes the status of certain issues relating to discovery and trial preparation. Part II addresses the Defendant's renewed motion to dismiss this case, which is denied for the reasons set forth.

I.  Discovery and Trial Preparation

   A.  *Laptop Use at Metropolitan Detention Center*

Much of the colloquy at last week's status conference concerned the Defendant's request that he be permitted to use and/or possess an internet-disabled laptop computer at the

1

Metropolitan Detention Center (MDC), loaded with the discovery the government has produced, to assist in trial-preparation. The defense raised the internet-disabled laptop with this Court for the first time on August 25th of this year, Def. Letter, Aug. 25, 2020, ECF No. 116, though they do report that they also raised this issue in January to the judge previously assigned to this case.[1]

This Court initially declined to order the Bureau of Prisons (BoP) to permit this arrangement, relying in part on representations from the government that to do so as requested would constitute a "serious security risk," Gov't Letter, Sept. 30, 2020, ECF No. 134 (citing BoP Letter, *United States v. Tavarez*, No. 19-CR-690 (S.D.N.Y. Sept. 25, 2020), ECF No. 72-1), and representations from the BoP in *United States v. Tavarez* that laptops are "defined as contraband," BoP Letter at 2.  The Court also relied on representations that the Defendant has other access to computers for discovery review at the MDC, including at the workstations on his cell block and during attorney visits.[2]

---

[1] This case was initially assigned to the Honorable Edward R. Korman.  It was transferred to the undersigned in February 2020.

[2] The government also worked to enable another alternative:  they arranged with the U.S. Marshals Service for Mr. Zhukov to be produced to the courthouse for regular counsel meetings in a meeting room in the Marshals' facility.  The defense declined to pursue this option based on the limited capacity for social-distancing in those meeting rooms.

Following my initial Order, the defense cited several recent cases relevant to this issue in a brief to the Court of Appeals. Those cases — none of which had been surfaced in prior proceedings before this Court — showed judges endeavoring to facilitate defendants' use of personal laptops at the MDC, sometimes with the assistance of the government or BoP. This Court called for a BoP lawyer to attend the conference last week, and the parties and BoP came to an arrangement on the record that will facilitate the Defendant's use, if not full and unfettered possession, of an internet-disabled laptop, loaded with the relevant discovery. The Court now affirms this arrangement (as memorialized by the government), and directs as follows:

> The defendant may have access to a laptop computer that is internet-disabled (the "Computer"). The defendant may use the Computer to review the discovery materials in this case, including materials that have been designated "sensitive discovery material." The defendant may share the contents of the Computer only with defense counsel, and no one else may review the contents of the Computer. The Computer shall be password-protected and maintained in a location acceptable to Bureau of Prisons personnel. Bureau of Prisons personnel will provide the defendant reasonable access to the Computer in one of the MDC's visiting rooms. Bureau of Prisons personnel may decline to take the defendant to the visiting room to access the Computer when female inmates are using the visiting room.

The government has further advised that, even in advance of this Order, they provided an internet-disabled laptop to the MDC for Mr. Zhukov's use.

### B. *In-Person Visits*

The defense team advised on September 8, 2020 that no attorney on the team was willing to meet with the Defendant in person at the MDC, given that each lawyer was "either in a category vulnerable to the consequences of a COVID-19 infection or lives with a vulnerable person." Def. Letter, Sept. 8, 2020, ECF No. 121. To address this issue, the Court proposed, *sua sponte*, that it would authorize Criminal Justice Act reimbursement for another attorney to be added to the defense team who would be amenable to in-person visits at the MDC. Conference Tr. 21:17-25, Sept. 16, 2020, ECF No. 126. Responding to this invitation, the defense enlisted Andrew Mancilla, Esq. Mr. Mancilla visited with the Defendant in person on October 6, 2020, but the defense advised the Court on October 15, 2020 that he was unwilling to return. Def. Letter, Oct. 15, 2020, ECF No. 147. The Court thanks Mr. Mancilla for his participation and will authorize Criminal Justice Act reimbursement in connection with his preparation for, and attendance at, the recent in-person meeting. He need not otherwise appear in this case, given the limited purpose for which his addition to the trial team was contemplated.

4

The Court has, however, now identified multiple "mentees" in the Criminal Justice Act Committee's mentoring program who have stated that they are willing to assist in this case, including by in-person visits at the MDC; counsel can call the Court's Case Manager for further information.

C.  *Trial Technology*

The government's motion related to trial technology, ECF No. 145, is granted.  The government is directed to contact the Court's Case Manager about plans to provide the dividers and other logistics.

II. Defense Motion to Dismiss

The Defendant moves to dismiss the case "based on ongoing violations of Mr. Zhukov's rights to speedy trial, counsel, due process, and fundamental fairness."  ECF No. 149.  This is not the Defendant's first motion to dismiss this case.  He previously moved to dismiss in April 2020, on the basis that the government of Bulgaria would not have extradited him to the United States "if the request were made today"; the Court denied that motion.  Def. Mot. to Dismiss at 1, Apr. 9, 2020, ECF No. 96; Order, Apr. 14, 2020, ECF No. 100.  The defense moved again in August 2020, in letter submissions that cited no legal authority.  *See* Def. Letter, Aug. 16, 2020. ECF No. 111; Def. Letter, Aug. 25, 2020, ECF No. 116.  The Court again declined to dismiss and instructed the Defendant to advance his argument in

5

a properly briefed motion.  Order at 5, Aug. 28, 2020, ECF No. 118; *see also* Conference Tr. 26:8-19, Aug. 17, 2020, ECF No. 113 (The Court:  "The parties have not yet really fully briefed the *Barker v. Wingo* issues . . . .  Mr. Frisch, [if] you want me to set a formal briefing schedule on the Sixth Amendment speedy trial issue, you will please let me know that.").  In its October 21 letter, the defense now renews the motion to dismiss, relying on *Barker v. Wingo,* 407 U.S. 514 (1972), and other cases, in light of the continued delay.

*Barker* sets the framework for determining when pretrial delay violates the Sixth Amendment.  The Supreme Court there identified three types of delay — deliberate, neutral, and valid — and ascribed differing weights to each.  Deliberate delay, which includes intentionally delaying to "gain some tactical advantage over (defendants) or to harass them," weighs most heavily in favor of dismissal.  *Id.* at 531 n.32.  Neutral delay is that which results from the government's negligence (at most) in managing the case efficiently; it too weighs in favor of dismissal, but less heavily than deliberate delay.  *Id.* at 531.  Finally, delay is categorized as valid when it emanates from factors beyond the government's control.

Thus far, the delay in bringing this case to trial is overwhelmingly attributable to one factor — the COVID-19 epidemic — that is surely beyond the prosecution's control.

6

*See, e.g.*, *United States v. Crittenden*, No. 4:20-CR-7, 2020 WL 5223303, at *3 (M.D. Ga. Sept. 1, 2020) ("Certainly, a global pandemic that is beyond the control of all the parties involved justifies an appropriate delay."); *United States v. Briggs*, No. 2:20-MJ-00410, 2020 WL 1939720, at *2 (E.D. Pa. Apr. 22, 2020) ("The reason for the Government's delay is a valid, neutral reason: a global pandemic."). The defense attempts to overcome this hard reality by faulting the government for the defense's difficulties preparing its case. But the most it can muster in that regard is an argument that the government should have acted with greater urgency to identify other cases in which defendants were permitted specialized computer usage at MDC. The defense is surely correct that the government is obligated to manage "the progress of a criminal case toward disposition and to take steps to avoid unnecessary delay where possible." *United States v. Tigano,* 880 F.3d 602, 613 (2d Cir. 2018). But Mr. Zhukov has cited no authority for the specific proposition that the government is obligated to perform legal research for the defense.

Moreover, the government's obligation to manage a criminal case's forward progress does not absolve the defense of its own obligation to prepare as diligently as practicable — especially when laboring under difficult conditions like the current ones. This obligation can be seen in cases considering

7

a defendant's legal entitlement to a continuance for additional trial-preparation time; there, courts ask whether the defense's prior efforts at preparation were diligent or dilatory.  *Cf., e.g., United States v. King,* 762 F.2d 232, 235 (2d Cir. 1985) (affirming district court's denial of motion to continue trial date because "any detriment suffered by [defendant] resulted from his own dilatory conduct").

Here, there are indications that the defense has chosen not to pursue every avenue available for preparation. The parties have known for many months that COVID-related restrictions would make trial preparation more difficult.  As in-person visits were curtailed, the Court urged the defense to maximize its use of the available telephone and videoconference capabilities to avoid a time-crunch like the one defense counsel is now describing.  Conference Tr. 17:20-22, July 15, 2020, ECF No. 106 (The Court:  "I would encourage you, of course, to [make as] much use of the phone as you can, and video as you need it, to get as much trial prep done as possible.").  Since videoconferencing became available at the MDC in late March, the Defendant could have scheduled approximately one or two videoconferences a week.  *See generally* Mediation Status Reports, *Federal Defenders of New York, Inc. v. Federal Bureau of Prisons*, No. 19-CV-660 (E.D.N.Y. 2020) (showing videoconferencing capacity steadily increase to fifty completed

videoconferences the week of October 15).  The government reports that these videoconferences can last up to two hours a session, Gov't Letter, Sept. 30, 2020, ECF No. 134, though the defense contends they are capped at one hour, Def. Letter, Oct. 22, 2020, ECF No. 157.  The videoconference technology allows attorneys to "screen share" documents with their clients.  Gov't Letter, Oct. 16, 2020, ECF No. 139.

It appears that defense counsel did not avail itself of this opportunity:  at the status conference on October 21, 2020, it emerged that the defense did not use the videoconferencing option *at all* until October 15, 2020 — more than seven months into the COVID-19 epidemic.  Conference Tr. 34:12-18, Oct. 21, 2020, ECF No. 156.[3]  Based on the foregoing discussion about videoconference availability, it is likely that the decision not to engage in such preparation represents an opportunity cost of scores of hours, at least, of trial-preparation time.

The Court appreciates the extreme and unprecedented challenge that the pandemic presents for trial preparation, and the complex interaction between the speedy trial issues

---

[3] The defense now says the videoconference is not effective, given that the screen sharing function renders the print too small in the documents being shared; but this complaint might have been more easily investigated and redressed if the defense had attempted it earlier and reported any difficulties then.

9

presented here and the bail considerations currently before the Second Circuit. But at this point — with the Defendant having been incarcerated pending trial for approximately twenty-one months[4] — the Court cannot conclude that the Defendant's speedy trial rights have been infringed. The renewed motion to dismiss this case on this ground is denied.

III. Conclusion

For the foregoing reasons, the Court (1) orders the MDC to provide the Defendant access to an internet-disabled laptop computer, as set forth herein; (2) grants the government's motion related to trial technology, ECF No. 145; and (3) denies the Defendant's renewed motion to dismiss, ECF No. 149.

SO ORDERED.

/s Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: October 27, 2020
Brooklyn, New York

---

[4] The Defendant was ordered detained in this case on January 18, 2019, at his first appearance. See Minute Entry, ECF No. 22.