

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP:SK/JAM/AFM  *271 Cadman Plaza East*
F. #2016R02228  *Brooklyn, New York 11201*

March 6, 2021

<u>By ECF</u>

The Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    United States v. Aleksandr Zhukov
             <u>Criminal Docket No. 18-633 (S-1)(EK)</u>

Dear Judge Komitee:

      At the February 26, 2021 status conference in this matter, the Court requested further factual development on the issue of whether U.S. authorities sent questions to the Bulgarian government pursuant to the October 12, 2018 MLAT request, and indicated that it considered this factual question material to the "joint venture" analysis. The government respectfully submits this letter and accompanying declarations in response to the Court's question.

      In 2018, FBI Supervisory Special Agent Jack Liao served as the FBI legal attaché in Sofia, Bulgaria. Liao Decl. ¶ 1. As such, SSA Liao was the liaison between U.S. authorities and Bulgarian authorities in connection with the defendant's arrest in this case and was have been aware of, and involved in, any communications with Bulgarian authorities regarding the arrest of the defendant and the search of the defendant's apartment. Liao Decl. ¶ 2. On November 5, 2018—which was one day before the defendant's arrest in Varna, Bulgaria—SSA Liao received a list of suggested questions from the prosecutors in this case for use by SSA Liao and other FBI agents in their interview of the defendant after his arrest. Liao Decl. ¶ 3. Because Liao was then in transit from Sofia to Varna, where he does not have an office, SSA Liao forwarded the list to a local Bulgarian official for printing. Liao Decl. ¶ 4. SSA Liao did not send the questions to Bulgarian officials for <u>those</u> officials to use in questioning the defendant. Liao Decl. ¶¶ 4-5. SSA Liao also did not send the questions to Commissioner Vladimir Dimitrov (further described below). Liao Decl. ¶ 5. As the government previously advised the Court, FBI agents who interviewed the defendant

following his arrest by Bulgarian authorities, after the conclusion of the search of his apartment, used those questions during the course of their interview of the defendant.[1]

        In 2018, Commissioner Vladimir Dimitrov served as an Inspector in Bulgaria's General Directorate for Combating Organized Crime. Dimitrov Decl. ¶ 1. On November 6, 2018, then-Inspector Dimitrov led the search of the defendant's apartment. Dimitrov Decl. ¶ 2. Inspector Dimitrov conducted the search pursuant to a Bulgarian search order and in accordance with standard Bulgarian search procedures. Dimitrov Decl. ¶ 3. Inspector Dimitrov was not asked by SSA Liao or any other U.S. official to question the defendant. Dimitrov Decl. ¶ 4. An FBI agent was present during the search but did not question or otherwise interact with the defendant during the search. Dimitrov Decl. ¶ 5. Dimitrov did not receive any list of suggested questions from U.S. officials and did not rely on any such list in speaking with the defendant during the search. Dimitrov Decl. ¶ 4. The questions he asked Zhukov during the search were the type of questions that he routinely asks a person whose home he is searching. Dimitrov Decl. ¶ 3.

        The government respectfully submits that these facts resolve the Court's question and remain undisputed. As set forth in the Liao Declaration, SSA Liao sent questions to a single Bulgarian official for printing, so that he and other FBI agents could use them in interviewing the defendant. As set forth in the Dimitrov Declaration, Inspector Dimitrov did not receive those questions or any other instructions about what to ask the defendant, from U.S. officials or from anyone else, and no U.S. official took part in interviewing the defendant during the search of his apartment. Thus, U.S. law enforcement officials did not "actively participate in questioning" the defendant in his apartment, nor did they "use foreign officials as their interrogation agents," and there was therefore no joint venture. United States v. Yousef, 327 F.3d 56 at 145-46 (2d Cir. 2003).

        On the basis of these affidavits, a hearing is not warranted. See United States v. Lopez-Imitola, No. 03-CR-294, 2004 WL 2534153 (S.D.N.Y. Nov. 9, 2004) (where government submitted affidavits establishing that U.S. agents did not participate in the questioning and did not provide questions to be asked of the defendant, the joint venture

---

[1] Notably, the suggested questions start with an advice of rights pursuant to Miranda. Liao Decl., Ex. A.

exception was inapplicable and a hearing was unnecessary) (citing cases).

                                  Respectfully submitted,

                                  SETH D. DUCHARME  
                                  Acting United States Attorney

By:    /s/  
       Saritha Komatireddy  
       Artie McConnell  
       Alexander Mindlin  
       Assistant U.S. Attorneys  
       (718) 254-7000

cc:    Zachary Margulis-Ohnuma, Esq. (by ECF)

DMP:SK/JAM/AFM
F.#2016R02228

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

ALEKSANDR ZHUKOV,
    also known as "Alexander
    Zhukov" and "ibetters,"

                  Defendant.

**DECLARATION OF JACK H. LIAO**

Cr. No. 18-633 (S-1) (EK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
EASTERN DISTRICT OF NEW YORK, SS:

    I, Jack H. Liao, declare:

    1.    I am a Supervisory Special Agent with the Federal Bureau of Investigation. In 2018, I was the FBI's legal attaché for Albania, Bulgaria, Kosovo, and North Macedonia. I was based at the United States Embassy in Sofia, Bulgaria.

    2.    In my position as FBI legal attaché, I served as a liaison between U.S. and Bulgarian law enforcement, including in connection with the Bulgarian authorities' arrest of Aleksandr Zhukov and their search of his apartment. To my knowledge, I was a participant in all communications between the FBI and Bulgarian law enforcement on this matter, and I am not aware of any other communications. Moreover, it would have been inconsistent with FBI practice for there to have been any communications with Bulgarian law enforcement about this matter on which I was not copied.

    3.    On November 5, 2018, I traveled from Sofia to Varna, Bulgaria in connection with the arrest of Aleksandr Zhukov, which was planned for the following day.

After I left Sofia, prosecutors at the United States Attorney's Office for the Eastern District of New York sent me a list of suggested questions to be used by the FBI in interviewing Zhukov after his arrest. The list of questions they sent me is attached to this affidavit as Exhibit A.

4. I was traveling from Sofia to Varna when I received the document, and I knew that the New York-based FBI agents who were traveling to Varna for the interview were already en route. I did not have access to a printer of my own in Varna. I asked a local employee of Bulgaria's General Directorate for Combatting Organized Crime ("GDBOP") to print the file for me, and I sent him the document so that he could print it for my use, and not his.

5. I did not send the list of questions to Inspector Vladimir Dimitrov of GDBOP or any other Bulgarian government employee besides the individual who printed it for me, and I did not direct or request that any Bulgarian government employee interview Aleksandr Zhukov.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 5, 2021

_____
Supervisory Special Agent Jack H. Liao
Federal Bureau of Investigation

# EXHIBIT A

## **Bulgaria Interview Questions for Alexander Zhukov**

I. <u>Advice of Rights</u>

Before we ask you any questions, we want to make sure that you understand your rights.

You have the right to remain silent.

If you have previously made statements, that does not mean you have to make statements to us now.

Anything you say to us now can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

Do you understand these rights?

Are you willing to speak with us and answer questions?

II. <u>Background and Mediamethane</u>

Please state your full name.

Are you the CEO of Mediamethane?

Is your email address a[at]mediamethane[dot]com?

You also use the email address ibetters[at]me[dot]com?

You also use the email address ibetters2[at]gmail[dot]com?

Do you use any other email addresses?

What kind of company is Mediamethane?

How does it operate?

Where are Mediamethane's offices?  Is there any other location where company records or computers are located?

Where is Mediamethane's bank account?

Who else works at or with Mediamethane?

- Boris Timokhin?  What is his title?  What are his duties and responsibilities?  Is his email address b[at]mediamethane[dot]com?  He also uses the email address mathete[dot]com[at]gmail[dot]com?  He also uses the email address qoqenator[at]gmail[dot]com?  Does he use any other email addresses?

- Mikhail Andreev?  What is his title?  What are his duties and responsibilities?  Is his email address x11org[at]gmail[dot]com?  Does he use any other email addresses?

- Denis Avdeev?  What is his title?  What are his duties and responsibilities?  What email addresses does he use?

- Dmitry Novikov?  What is his title?  What are his duties and responsibilities?  What email addresses does he use?

- Sergey Ovsyannikov?  What is his title?  In what ways has he worked with Mediamethane?  What email addresses does he use?

In addition to email, you all also used Jira to communicate, correct?

III.   <u>Metan</u>

Let's talk about Metan.

As part of Metan, you rented servers from Webzilla, correct?

How many servers did you rent?

When did you begin renting the servers?  How long did you rent them for?

What did you use the servers for?

You also rented IP addresses from Hoststore, correct?

How many IP addresses did you rent?

When did you begin renting IP addresses?  How long did you rent them for?

What did you use the IP addresses for?

You registered those IP addresses in various names, correct?

What names did you register the IP addresses in?

You knew that those names mimicked U.S. companies?

Who programmed the servers that you rented?

What were they programmed to do?

Where did you store the programming code?

The Metan code instructed the servers to engaged in "mouse move," correct? How did that work? What was the purpose?

The Metan code instructed the servers to appear to be logged into Facebook, correct? How did that work? What was the purpose?

The Metan code instructed the servers to appear to be logged in from a U.S. time zone, correct? How did that work? What was the purpose?

You monitored who well Metan performed using Cent by Cent, correct? Abbreviated CBC? How did that work? What was the purpose?


IV.     <u>Photos</u>

Please tell us if you recognize any of these individuals and, if so, when you met them and what you know about them.
- Photo 1 [Boris Timokhin]
- Photo 2 [Mikhail Andreev]
- Photo 3 [Denis Avdeev]
- Photo 4 [Dmitry Novikov]
- Photo 5 [Sergey Ovsyannikov]
- Photo 6 [Evgeny Timchenko]
- Photo 7 [Alexander Isaev]

DMP:SK/JAM/AFM
F.#2016R02228

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

ALEKSANDR ZHUKOV,
    also known as "Alexander
    Zhukov" and "ibetters,"

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DECLARATION OF
VLADIMIR DIMITROV**

Cr. No. <u>18-633 (S-1) (EK)</u>

EASTERN DISTRICT OF NEW YORK, SS:

        I, Vladimir Dimitrov, declare:

        1.    I am Commissioner of the Cybercrime Department of Bulgaria's General Directorate for Combatting Organized Crime ("GDBOP"). In 2018, I held the title of Inspector within GDBOP.

        2.    On November 6, 2018, I led a team of Bulgarian police that arrested Aleksandr Zhukov and searched his apartment pursuant to a Bulgarian court order. I searched the apartment in accordance with standard Bulgarian search procedures.

        3.    Over the course of the search, I asked Zhukov about various items that we found. The questions that I asked were those that I typically ask of the resident when carrying out a search warrant at someone's home. I did not receive a list of suggested questions from U.S. officials and did not rely on any such list in speaking with Zhukov during the search. I was not asked by any U.S. official to question Zhukov. I did not receive

any directions from U.S. officials (whether directly or indirectly) about how to search Zhukov's apartment or what questions to ask Zhukov.

4.  An FBI agent was present as an observer but stayed in one place throughout the search, took no part in the search, and did not question, speak with, or otherwise interact with Zhukov during the search.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 6, 2021

_____
Vladimir Dimitrov

2