DMP:SK/JAM/AFM
F.#2016R02228

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                     No. 18-CR-633 (S-1) (EK)

ALEKSANDR ZHUKOV,
     also known as "Alexander
     Zhukov" and "ibetters,"

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

REPLY TO THE DEFENDANT'S RESPONSE TO
THE GOVERNMENT'S PROPOSED JURY INSTRUCTIONS

MARK J. LESKO
ACTING UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Saritha Komatireddy
Artie McConnell
Alexander F. Mindlin
Assistant U.S. Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

On February 25, 2021, the government filed proposed instructions to charge the jury at the conclusion of the trial.  See ECF No. 238.  The defendant filed objections and alternative proposed charges on March 11, 2021, see ECF No. 225, and the government now writes in reply.

As described below, the government respectfully reiterates its request that the Court charge the jury as described in its February 25, 2021 filing, which is grounded in applicable precedent and the facts of the instant case.  The defendant's proposed charges frequently break with established law in the Second Circuit.  Additionally, the defendant repeatedly asks the Court to use charges in the Modern Federal Jury Instructions ("Sand") without modification.  While Sand provides a useful baseline and point of departure for crafting jury charges, simply repeating its language would fail to account for the factual and legal contours of the instant case.  See Moore's Federal Practice 26-630 (courts have broad latitude in formulating instructions and charging the jury) (collecting cases).

Accordingly, the government requests that the instructions detailed in its February 25, 2021 proposal be included in the Court's jury charge, and requests leave to offer such other instructions as may become appropriate during the course of the trial.

1

I. The Court Should Reject the Defendant's Attempt to Preclude Deliberation on the Money Laundering Charges and Condition Such Deliberation on Count Two

The defendant requests that "the jury be instructed that they should consider Counts Three and Four [money laundering conspiracy and money laundering] … only if they find the defendant guilty of Count Two [wire fraud]." ECF No. 225, p. 1. This request runs counter to the decisions of courts throughout the country that have explicitly held that an acquittal on a substantive offense will not bar a money laundering conviction where that substantive offense (here, wire fraud) serves as the predicate specified unlawful activity ("SUA") for the money laundering offense. See, e.g., United States v. Rice, 551 F.App'x 656, 660-61 (4th Cir. 2014) (defendant's acquittal on the offense charged as underlying SUA does not mean jury could not have found he knew the property involved in § 1957 offense was the proceeds of "some form" of unlawful activity to satisfy the knowledge element); United States v. Cherry, 330 F.3d 658, 667-68 (4th Cir. 2003) (acquittal on substantive embezzlement counts does not undermine the money laundering conviction predicated on embezzlement); United States v. Tencer, 107 F.3d 1120, 1130-31 (5th Cir. 1997) (acquittal on particular mail fraud counts did not require acquittal on money laundering where jury could have found that property being laundered was proceeds of other parts of the mail fraud scheme); United States v. Mankarious, 151 F.3d 694, 703 (7th Cir. 1998) (because money laundering does not require proof of a specific mail fraud offense, dismissal of specific mail fraud counts has no effect on money laundering counts); United States v. Sims, 144 F.3d 1082, 1083-85 (7th Cir. 1998) (acquittal on underlying drug conspiracy does not require reversal of conviction on money laundering counts predicated on drug conspiracy); United States v. Dugan, 238 F.3d 1041, 1043 (8th Cir. 2001) (acquittal on underlying drug conspiracy does not preclude reliance on evidence of such conspiracy in upholding conviction for money laundering conspiracy); United States v.

2

Lazarenko, 564 F.3d 1026, 1037 (9th Cir. 2009) (when indictment alleged multiple SUAs, acquittal on one does not undermine the money laundering conviction where there was evidence that the money was the proceeds of the other SUAs); United States v. Kennedy, 64 F.3d 1465, 1480 (10th Cir. 1995) (in mail fraud case, fact that defendant was acquitted of fraudulent mailing to victim did not require acquittal as to money laundering charge involving that victim); United States v. Ward, 197 F.3d 1076, 1082 (11th Cir. 1999) (defendant's acquittal on two of the three substantive offenses underlying the money laundering count did not require reversal of the money laundering conviction).

Courts have similarly found that a money laundering conviction will stand if a jury could have found that someone other than the money laundering defendant committed an SUA. See, e.g., United States v. Chilingirian, 280 F.3d 704, 711 (6th Cir. 2002) (acquittal on SUA does not affect conviction for money laundering conspiracy; there is no requirement that defendant commit the SUA himself, and jury could have found that SUA was committed by co-defendant); United States v. Jackson, 983 F.2d 757, 766-67 (7th Cir. 1993) (defendant acquitted of drug conspiracy but convicted of money laundering; court upheld money laundering conviction because, while jury may not have believed that he was involved in conspiracy charged, they still found defendant laundered drug proceeds); United States v. Cherico, No. 08-CR-786 (CM), 2012 WL 1755749, *7 (S.D.N.Y. May 16, 2012) (although a particular bank fraud offense was alleged as SUA for the money laundering offense, and defendant was acquitted of that fraud count, jury could have found that someone other than defendant committed SUA offense).

Accordingly, the jury need not convict the defendant on the wire fraud offense charged in Count Two in order to deliberate and convict on the money laundering charges in

3

Count Three and Count Four. The defendant's request to instruct the jury as such should be denied.

    II.    <u>Neither Commission of an Overt Act Nor Willfulness Is an Element of Conspiracy to Commit Money Laundering or Wire Fraud</u>

With respect to both the charged wire fraud and money laundering conspiracy counts, the defendant requests that the Court charge the jury that the government must prove "that an overt act in furtherance of the conspiracy was committed." ECF No. 225, pp. 1-3. The defendant also requests that the Court charge the jury that a willfulness mens rea is required for the conspiracy counts. <u>Id</u>. Both of these requests should be denied, as they contravene the statutory text of the charged crimes, as well as Supreme Court and Second Circuit precedent.

To establish a conspiracy, the government must prove beyond a reasonable doubt the existence of the conspiracy and the defendant's knowing participation in it. <u>See</u> <u>United States v. McGinn</u>, 787 F.3d 116, 124 (2d Cir. 2015); <u>United States v. Story</u>, 891 F.2d 988, 992 (2d Cir. 1989). However, convictions for conspiracy to commit wire fraud and conspiracy to commit money laundering do not require proof of an overt act. <u>See</u> <u>Whitfield v. United States</u>, 543 U.S. 209, 214, 219 (2005) (comparing 18 U.S.C. §§ 371 and 1956, noting the latter [money laundering conspiracy] omits any express overt act requirement, and holding "that conviction for conspiracy to commit money laundering . . . does not require proof of an overt act in furtherance of the conspiracy."); <u>United States v. Roy</u>, 783 F.3d 418, 420 (2d Cir. 2015) (following <u>Whitfield</u> and finding that "Section 1349 [wire fraud conspiracy] does not expressly require commission of an overt act. As a result, many other Circuits, as well as several district courts in this Circuit, have concluded that a conviction under the statute does not require proof of an overt act.") (collecting cases).

4

The cases cited by the defendant are inapposite.  Specifically, United States v. Mahaffy, 693 F.3d 113 (2d Cir. 2012), deals with conspiracy against the background of securities fraud charged under 18 U.S.C. § 1348, and United States v. Monaco, 194 F.3d 381 (2d Cir. 1999), while perfunctorily reciting the elements of conspiracy to include an overt act, discusses overt acts in the context of an Ex Post Facto challenge.[1]  Regardless, even if Monaco stood for the proposition argued by the defendant, Whitfield and its progeny, including Roy, are dispositive: "where the text of a statute does not expressly make the commission of an overt act an element of the conspiracy offense, the Government need not prove an overt act to obtain a conviction."  Roy, 783 F.3d at 420 (quoting Whitfield, 543 U.S. at 214, 219) (internal quotations omitted).  The defendant's request to charge otherwise is thus improper.

So too is the defendant's request to impose a willfulness mens rea into the conspiracy charges, as neither of the applicable statutes contain such a requirement.  United States v. Brown, 31 F.3d 484, 490 n.3 (7th Cir. 1994) (willfulness is not an element of a § 1956 offense; government is not required to prove defendants knew that their conduct was illegal); United States v. Golb, 69 F.3d 1417, 1428 (9th Cir. 1995) (same); United States v. Lewis, 117 F.3d 980, 984 (7th Cir. 1997) (same); United States v. Covey, 232 F.3d 641, 647 (8th Cir. 2000) (same); United States v. Rogers, 769 F.3d 372, 377 (6th Cir. 2014) (citing the Sixth Circuit Pattern Criminal Jury Instruction 3.01A and noting that because the defendant was charged with "conspiracy to commit wire fraud, 18 U.S.C. § 1349, the government also was required to establish beyond a reasonable doubt that two or more persons conspired, or agreed, to commit

---

[1]  Notably, at least one other case citing Monaco has emphasized that no overt act is required for conspiracy to commit wire fraud or money laundering pursuant to 18 U.S.C § 1956(h).  See United States v. Carpenter, 190 F. Supp. 3d 260, 267 (D. Conn. 2016).

5

the crime of [wire fraud] and that the defendant knowingly and voluntarily joined the conspiracy.") (internal quotations omitted); Charge of the Hon. Pamela K. Chen in United States v. Webb ("FIFA"), 15-CR-252 (E.D.N.Y. 2017) pp. 4572 ("[t]he following are the elements of the crime of conspiracy.  First, two or more persons entered into the particular unlawful agreement charged in the conspiracy count that you are considering; and, second, the defendant knowingly and intentionally became a member of the conspiracy."); United States v. Hansen, 791 F.3d 863, 870-72 (8th Cir. 2015) (applying the Eighth Circuit Manual of Model Jury Instructions (Criminal) 5.06A–I (2014) for 18 U.S.C. § 1349).  The cases cited by the defendant do not stand for the proposition he advocates—United States v. Velez, 652 F.2d 258 (2d Cir. 1981), related to a narcotics distribution conspiracy in violation of 21 U.S.C. §§ 846 and 963, and United States v. Marchese, 438 F.2d 452 (2d Cir. 1971), applied the willfulness mens rea to the underlying offense, not the conspiracy charge.

While "willfully" is sometimes used interchangeably with "intentionally" in jury instructions charging wire fraud and wire fraud conspiracy in this and other districts, doing so is likely erroneous.  See United States v. Middendorf, No. 18-CR-36, 2019 WL 4254025, at *7 (S.D.N.Y. Sept. 9, 2019) (Oetken, J.) (explaining that "some version of the Sand instruction on willfulness is frequently given by judges in the Southern District of New York in wire fraud cases.  However, there is a dearth of authority supporting the correctness of that instruction in the wire fraud context, particularly in light of the fact that 'willfulness' is not included in the wire fraud statute itself"; "Sand's willfulness instruction is at least misleading and likely incorrect"); United States v. Newton, 766 F. App'x 742, 747 (11th Cir. 2019) (holding that the mail and wire fraud "statutes do not include willfulness as an element"); see also United States v. Kowalewski, No. 2:13-CR-00045, 2015 WL 1951810 (N.D. Ga. Apr. 29, 2015) (adopting conclusion that

6

"willfulness is not an element of the offense of wire fraud" in light of the statutory text and developing Supreme Court case law).

    III.    <u>The Defendant's Requested Wire Fraud Charge Is Overly Restrictive and Inaccurate</u>

The defendant suggests drastic modifications to the wire fraud charge proposed by the government, claiming that his version hews more closely to the pattern instruction in Sand. <u>See</u> ECF No. 225, pp. 3-7. In so arguing, the defendant requests, <u>inter alia</u>, that: the Court not give a conscious avoidance charge; not specify that there is no requirement that the person or entity deceived be the same person ultimately deprived of money or property by the fraud; ignore the "cause to be transmitted" language in both the statute and indictment; and muddy the mens rea requirement by removing illustrative examples. The defendant cites no law in support of such a diluted charge, which diverges significantly from the plain text of the statute and established Second Circuit caselaw, invariably inviting more questions from the jury than they answer. The Court should adopt the government's proposed wire fraud charge, which blends Sand with established Second Circuit precedent, where appropriate.[2]

---

    2    Notably, Sand recognizes its own limitations in the Second Circuit, and courts in the Second Circuit – and the Second Circuit itself – routinely blend the Sand instruction with the Second Circuit's own formulations. District courts within this Circuit routinely give the Sand instruction on the elements of wire fraud, even though the Court of Appeals itself has at times used a different formulation. <u>Compare</u> <u>United States v. Weaver</u>, 860 F.3d 90, 94 (2d Cir. 2017) (stating elements of mail and wire fraud) <u>with</u> Sand § 44.04 (contrasting Sand charge with the <u>Weaver</u> formulation, and criticizing <u>Weaver</u> charge because "the requirement that the scheme be directed to depriving the victim of money or property is an integral part of both the scheme to defraud and intent elements, so treating it as a separate element is unnecessarily repetitive"). Indeed, the district court in <u>Weaver</u> itself did not use the formulation that appeared in the Second Circuit's approving opinion, but instead tracked the approach supported by Sand. <u>Compare</u> the charge of the Hon. Joan M. Azrack in <u>United States v. Weaver</u>, 13-CR-120 (E.D.N.Y. 2015), available at 2015 WL 7068815 (delineating the elements of wire fraud as (1) "a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises," (2) "that defendant knowingly and willfully participated in the

7

For example, the defendant proposes deletion of the following language from the government's proposed charge:

> However, there is no requirement that any false or fraudulent statement be made to or involve the same person or entity whose money or property is the object of the scheme. In other words, there is no requirement that the person deceived be the same person deprived of money or property by the fraud.

The defendant seeks to remove this language, despite the fact that it is plainly applicable to the instant case, as it would be in almost any complex fraud where there are attenuated communications or links between perpetrator and victim. The government's proposal tracks the language of the Second Circuit's holding in United States v. Greenberg, which rejected the "convergence theory" of wire fraud and noted that nothing in the statute "suggests that the scheme to defraud must involve the deception of the same person or entity whose money or property is the object of the scheme. To the contrary, we agree . . . that the statutory language in both the mail and wire fraud statutes is broad enough to include a wide variety of deceptions intended to deprive another of money or property and [w]e see no reason to read into the statutes an invariable requirement that the person deceived be the same person deprived of the money or property by the fraud." 835 F.3d 295, 305-307 (2d Cir. 2015) (quoting United States v. Christopher, 142 F.3d 46, 54 (1st Cir. 1998)) (internal quotations omitted). Judge Rakoff recently cited the holding of Greenberg with approval as follows: "Five courts of appeals,

---

scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; or that he knowingly and intentionally aided and abetted others in the scheme; and (3)…the defendant must have used…interstate wires in execution of that scheme.") with United States v. Weaver, 860 F.3d 90, 94 (2d Cir. 2017) ("The essential elements of [mail and wire fraud] are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." (quoting United States v. Binday, 804 F.3d 558, 569 (2d Cir. 2015) (internal quotation marks omitted)).

including the Second Circuit, have concluded that the wire fraud statute does not 'require convergence between the parties intended to be deceived and those whose property is sought in a fraudulent scheme.'" United States v. Weigand, 482 F. Supp. 3d 224, 237 (S.D.N.Y. 2020), as corrected (Sept. 2, 2020).  Thus, plain Second Circuit language on this point can and should be relayed during the Court's instructions.  See Greenberg, 835 F.3d at 306 ("[w]e have never read the wire and mail fraud statutes as limited to schemes in which the party whose money or property is the object of the scheme is the same party whom a fraudster seeks to deceive.  Indeed, we have declined opportunities to do so." (collecting cases)).

The defendant also proposes removing the following language from the charge: "it is sufficient if the government establishes that the defendant caused the fraudulent statement, representation or promise to be made, or caused the fact to be omitted."  The defendant also proposes removing explanatory language regarding the mens rea requirements—including a standard conscious avoidance charge—and omitting any reference to the particular facts and circumstances of the instant case.  Citing no caselaw or rationale for doing so, the defendant seeks to omit these black-letter clarifications to the statutory language, which are commonly given in almost every wire fraud case in this district.  For example, in United States v. Webb et. al., Judge Chen gave the following expanded instruction as part of her wire fraud charge:

> It is not necessary for the conspirator to be directly or personally involved in the wire communications, as long as the wire communication was reasonably foreseeable in the execution of the alleged scheme to defraud.  Evidence that a defendant agreed to cause the wires to be used by others is sufficient.  This does not mean that a defendant must specifically have authorized others to do the communication.  When one does an act with knowledge that the use of the wires will follow in the ordinary course of business or where such use of the wires can reasonably be foreseen, even though not actually intended, then he causes the wires to be used for the purposes of the element.  Furthermore, this wire use requirement is satisfied even if the wire use was done by a

9

> person with no knowledge of the fraudulent scheme, including a victim of the alleged fraud. The use of the wires need not itself transmit a fraudulent representation. It must, however, further or assist in the carrying out of the scheme to defraud.

Charge of the Hon. Pamela K. Chen in United States v. Webb et. al. ("FIFA"), 15-CR-252 (E.D.N.Y. 2017). Judge Bianco gave a similar instruction in United States v. Meszaros, 06-CR-503 (E.D.N.Y. 2008):

> It is not necessary for the defendant to be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating. In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that the defendant caused the wires to be used by others. This does not mean that the defendant must specifically have authorized others to make or cause the transfer of funds. When one does an act with knowledge that the use of the wires will follow in the ordinary course of business or where such use of the wires can reasonably be foreseen, even though not actually intended, then he causes the wires to be used.

Id. at pp. 50. See also the charge of the Hon. Joan M. Azrack in United States v. Weaver, 13-CR-120 (E.D.N.Y. 2015), available at 2015 WL 7068815 ("it is not necessary for the defendant to be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating. The government contends that it was reasonably foreseeable that the wires would be used in the ordinary course of Vendstar's business, including in communications with potential customers."); the charge of the Hon. Joseph F. Bianco in United States v. Kenner, 13-CR-607 (E.D.N.Y. 2015), ECF No. 296, pp. 42-53 (same).

Thus, in applying established precedent that addresses the factual and legal particulars of the instant case, the government's proposed wire fraud charge is better suited for the Court's jury instruction.

10

IV.    The Defendant's Proposed Charge for Count Four Lacks Important Jurisdictional Clarification

While largely tracking the government's proposed instruction and the Sand model instruction for 18 U.S.C. § 1957, the defendant's proposed charge lacks an important explanation that is highly relevant in this case. Specifically, given the existence of foreign transactions among the many pertinent wire transactions, the government proposed charging the jury that transfers to and from accounts in United States financial institutions are monetary transactions that "take place" in the United States. This is settled law and the jury should be instructed accordingly. See United States v. All Assets Held at Bank Julius, 251 F. Supp. 3d 82, 97 (D.D.C. 2017) ("although few courts have considered where a monetary transaction "takes place" under Section 1957, the Court is satisfied that transfers to accounts in U.S. financial institutions and from accounts in U.S. financial institutions are monetary transactions that "take place" in the United States."); United States v. Prevezon Holdings, Ltd., 251 F. Supp. 3d 684, 693 (S.D.N.Y. 2017) (applying Bank Julius in the context of correspondent banking where the legs of the transaction touch the United States); United States v. Ho, 984 F.3d 191, 205 (2d Cir. 2020) (adopting Prevezon); United States v. Approximately $25,829,681.80 in Funds, No. 98-2682, 1999 WL 1080370, at *3 (S.D.N.Y. Nov. 30, 1999).

V.    Charges Concerning Attempt, Aiding and Abetting, and Success of the Scheme Are Appropriate

The defendant makes three related requests: first, that the Court not give an instruction regarding the law on attempt; second, that the Court only instruct the jury on aiding and abetting if "a factual predicate is established at trial"; and third, that the Court omit the following language from its wire fraud instruction—"[a]lthough whether or not the scheme actually succeeded is really not the question, you may consider whether it succeeded in

11

determining whether the scheme existed." ECF 255, pp. 4, 14, 9-12. None of these requests should be granted, as the government is free to charge and argue alternative theories of liability to the jury.

For example, regarding attempt, per the Federal Rules of Criminal Procedure, "[a] defendant may be found guilty of . . . an attempt to commit the offense charged." Fed. R. Crim. P. Rule 31(c)(2); see United States v. Dhinsa, 243 F.3d 635, 675 (2d Cir. 2001) ("[u]nder Fed. R. Crim. P. 31(c), a defendant may be found guilty of an attempt to commit a substantive offense, whether or not the attempt was charged in the indictment, provided an attempt is punishable." (quoting United States v. Marin, 513 F.2d 974, 976 (2d Cir.1975) (internal quotations omitted)). Both 18 U.S.C. §§ 1349 and 1957 expressly make attempts to commit the substantive wire fraud and money laundering offenses charged in Counts Two and Four punishable. Accordingly, there is nothing duplicitous about charging or arguing that a defendant attempted and completed wire fraud or money laundering as alternative theories to the jury—"in so doing the government is merely making explicit its right to a verdict, should the evidence warrant, finding defendant guilty of an attempt to commit the offense charged, whether an attempt is charged in the indictment or not." See United States v. Quinn, 364 F. Supp. 432, 437 (N.D. Ga 1973) (citing Rule 31(c)); Marin, 513 F.2d 974, 976. Thus, failure to charge the jury as requested would misstate the law, create an additional burden of proof on the government, and prevent the jury from considering alternative, concomitant theories of liability during their deliberations.

Additionally, and citing no authority, the defendant seeks to add an overt act requirement to the Court's aiding and abetting charge. Specifically, the defendant requests that the Court charge the jury that "to establish that the defendant participated in the commission of the crime, the government must prove that defendant engaged in some affirmative conduct or

overt act for the specific purpose of bringing about that crime." ECF 225, p. 11. As discussed previously, this is wholly unsupported by the law and should not be included in the Court's charge.

VI. The Court Should Adopt the Government's Proposed Accomplice Testimony Charge

The defendant's proposed accomplice testimony charge lacks two important and well-established principles that commonly appear in such charges: that the accomplice testimony comes from cooperating witnesses, and that the jury should not speculate about the cooperating witness' eventual sentence. These instructions are routinely given in cases with cooperator testimony, as they are crucial to the jury's role and ability to evaluate the witness and make a credibility determination. For example, in United States v. Nordlicht et. al., No. 16-CR-640 (E.D.N.Y. 2019), Judge Cogan gave the following additional instructions as part of his accomplice testimony charge:

> You also heard from witnesses who testified that they were themselves involved in one or more of the charged crimes with one or more of the Defendants. You have heard these witnesses referred to as "cooperators." Experience will tell you that the Government sometimes must rely on the testimony of witnesses who admit to participating in criminal activity. The law allows the use of cooperating witness testimony. It is the law in the federal courts that such testimony may be enough, standing alone, for conviction if the jury finds that the testimony establishes guilt beyond a reasonable doubt . . . . I want to reiterate the instruction I gave you during trial on the procedure for sentencing cooperating witness. When someone cooperates with the Government, the Government does not determine what sentence they are going to get, nor does the Government typically make a recommendation to the sentencing judge as to how much time the Government believes that cooperating witness should get. What the Government will do if it is satisfied with the witness' cooperation is write to the sentencing judge what is known as a 5K1 letter. That letter sets forth the nature of the crimes that the cooperating witness has committed and all the cooperation that the witness has undertaken. The judge takes that letter, together with a lot of other

13

> information about the cooperating witness and all of the crimes that the cooperating witness has committed, and it is the judge exclusively who decides the appropriate sentence, not the Government. All that a cooperating witness gets from the Government, if the Government is satisfied with their cooperation, is the 5K1 letter. The letter can also be significant because if a cooperating witness receives one, the judge is permitted, but not required, to sentence that witness below any mandatory minimum that the law would otherwise require, if there is one. It is the Government's decision as to whether to submit the letter, but it is the judge's decision alone as to what the sentence should be.

The charge of the Honorable Brian M. Cogan, United States v. Nordlicht et. al., 16-CR-640 (E.D.N.Y. 1019), Trial Tr. 7120-23; see also the charge of the Hon. Pamela K. Chen in United States v. Webb et. al. ("FIFA"), 15-CR-252 (E.D.N.Y. 2017). Distinguishing cooperating witnesses as offering a particular type of accomplice testimony and explaining the mechanism for their eventual sentencing is essential to the jury's fair consideration of their testimony. As such, the government requests the Court adopt its proposed instruction regarding accomplice testimony.

  VII. <u>The Court Should Reject the Defendant's Proposals Regarding Uncalled Witnesses, Investigative Techniques, Other Persons Not on Trial, and Witness Preparation</u>

The defendant requests that the Court modify—or remove entirely—several charges typically given in almost every criminal case: uncalled witnesses, investigative techniques, other persons not on trial, and the propriety of witness preparation and interviews. ECF 255, pp. 14-18. While the defendant argues that doing so will guard against jury speculation, the exact opposite is true—failure to adequately charge the jury on these subjects invites inappropriate speculation and conjecture against the government. See, e.g., United States v. Bahna, 68 F.3d 19, 22 (2d Cir. 1995) (noting the propriety of uncalled witness instruction) (collecting cases); United States v. Saldarriaga, 204 F.3d 50, 53 (2d Cir. 2000) (per curiam)

14

(approving instruction to jury regarding investigative techniques, including "[t]he government's function is to give enough evidence to satisfy you beyond a reasonable doubt . . . the fact that there are a thousand other things they could have done is wholly irrelevant."). These instructions do nothing to lessen the government's burden of proof or distort the manner in which jurors may consider evidence. On the contrary, they define the appropriate parameters within which jurors may consider uncharged co-conspirators, uncalled witnesses, prior interviews and trial preparation, and the government's investigative techniques. The jury should be charged accordingly, as they are in almost every case in this district.

## VIII. The First Circuit Pattern Instruction Regarding Expert Testimony Is Too General

The government agrees with the defendant that the phrase in the last sentence of the government's instruction "placing great reliance on the expert's testimony" should be changed and substituted with "relying on the expert's testimony." ECF No. 238 at 44-45. However, the defendant's proposed adoption of the First Circuit pattern charge is too brief and too general when considering the types of different expert testimony to be adduced at trial. Indeed, more fulsome charges are typically given in this district. See, e.g., the charge of the Honorable Joseph F. Bianco in United States v. Meszaros, 06-CR-503 (E.D.N.Y. 2008), ECF No. 166, pp. 17-18 and United States v. Kenner, 13-CR-607 (E.D.N.Y. 2015), ECF No. 296, p. 24; the charge of the Honorable Nicholas Garaufis in United States v. Pugh, 15-CR-116 (E.D.N.Y. 2107); the charge of the Honorable Brian M. Cogan in United States v. Al Farekh, 15-CR-268 (E.D.N.Y. 2017), Trial Tr. pp. 1601-02. An expanded charge is warranted here, as the government intends to call five expert witnesses, not including translators. Thus, with the alteration consented to above, the government's charge is better suited for this case.

15

## CONCLUSION

For the foregoing reasons, and as qualified herein, the government requests that the instructions detailed in its February 25, 2021 proposal be included in the Court's jury charge. The government also requests leave to offer such other instructions as may become appropriate during the course of the trial.

Dated:    Brooklyn, New York
           March 25, 2021

                        Respectfully submitted,

                        MARK J. LESKO
                        Acting United States Attorney
                        Eastern District of New York
                        271 Cadman Plaza East
                        Brooklyn, New York 11201

By:    /s/Saritha Komatireddy
           Saritha Komatireddy
           Artie McConnell
           Alexander F. Mindlin
           Assistant United States Attorneys
           (718) 254-7000