UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                -against-

ALEKSANDR ZHUKOV,

          Defendant.

------------------------------x

**ORDER**

18-CR-633(EK)

ERIC KOMITEE, United States District Judge:

Trial in this case is scheduled to begin on May 5, 2021.  Before the Court is the Defendant's fourth motion to dismiss the indictment on Sixth Amendment speedy-trial grounds.[1]  I denied his most recent speedy-trial motion in an Order dated October 27, 2020 ("October 27th Order").  As of that date, twenty-one months had passed since the Defendant was extradited and detained at the Metropolitan Detention Center ("MDC").  The October 27th Order balanced the factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), that dictate when pretrial delay violates the Sixth Amendment.  I concluded that there was no constitutional violation, largely because the predominant reason for the delay — the Covid-19 pandemic — emanated from factors beyond the government's control.  *See* October 27th Order at 6-7, ECF No. 167.  The Defendant requests that I reconsider that

---

[1] The prior motions were on (i) April 9, 2020, decided April 14, 2020 (ECF Nos. 96, 100); (ii) August 16, 2020, decided August 28, 2020 (ECF Nos. 111, 118); and (iii) October 21, 2020, decided October 27, 2020 (ECF Nos. 149, 167).

decision in light of the six months that have passed since, the Defendant's "readiness to proceed" to trial, and the hardships the Defendant has faced in custody.  Def. Motion at 4, ECF No. 258.  Having considered the issue anew, I deny the new motion to dismiss for the following reasons, and also those set forth in the October 27th Order (familiarity with which is assumed).

## I.   Background

The Defendant was indicted on November 27, 2018.  He was extradited to the United States and arraigned on January 18, 2019, and has since been detained at the Metropolitan Detention Center.  Trial was originally scheduled for March 16, 2020, but was rescheduled for April 27, 2020 on consent of the Defendant. *See* Def. Letter dated February 18, 2020, ECF No. 82 (consenting to new trial date).[2]  The Court then adjourned trial a number of times due the Covid-19 pandemic and the attendant pause in in-person court proceedings in this District.  The Defendant objected to those adjournments.  *See, e.g.*, Order dated August 28, 2020, ECF No. 118.

At the time I issued the October 27th Order, criminal trials had resumed in this District, and the instant trial was set to begin on November 23.  But three days after I denied the motion to dismiss, on October 30, defense counsel moved — with virtually no warning — to be relieved from the case, citing

---

[2]  This case was transferred to the undersigned on February 24, 2020.

concerns that their health would be in jeopardy if they were to have to appear in person at trial.  ECF No. 169.  At the time, the defense indicated that Mr. Zhukov was contemplating proceeding *pro se*.  The Court granted the request to relieve counsel, despite the negative impact that decision had on the trial schedule, and arranged for Mr. Zhukov to meet with new counsel on an expedited basis to consider the risks associated with proceeding as his own attorney.

After confirming with Mr. Zhukov that he wanted to proceed with legal representation, I appointed new counsel (Mr. Zhukov's current attorney, who is experienced in complex fraud cases).  ECF No. 178; ECF Order dated Nov. 9, 2020.  Trial was adjourned to March 1, 2021 to allow new counsel to prepare for trial.  ECF No. 178.  It was evident by early January, however, that it would be virtually impossible to go forward in March due to the upward trend in coronavirus cases and deaths in New York. The District's Chief Judge issued successive orders prohibiting in-person trials.  *See* Administrative Orders Nos. 2020-26 (suspending trials for the period November 24, 2020 through January 19, 2021); 2020-26-2 (extending the suspension through March 1, 2021); 2021-04 (extending through March 26, 2021).

I adjourned trial to April 12, for the reasons set forth in my January 15th Order.  ECF No. 211.  I later ordered one final, modest adjournment of that date — to May 5 — at the

request of the District's Trial Committee, which has the
responsibility for allocating limited trial dates.  ECF No. 257.
The Committee's recommendation, in turn, was predicated on the
considered advice of an epidemiologist they retained to assist
in managing health and safety concerns.  Jury selection finally
began on April 26.

## II.  Discussion

The Supreme Court has set forth four factors to assess
whether a defendant's Sixth Amendment right to a speedy trial
has been violated: "[l]ength of delay, the reason for the delay,
the defendant's assertion of his right, and prejudice to the
defendant."  *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  These
factors "have no talismanic qualities" and "must be considered
together with such other circumstances as may be relevant."  *Id.*
at 533.

*Length of Delay*.  The additional six months of delay
since October does not require dismissal.  In total, twenty-nine
months have passed since the filing of the indictment and
twenty-seven-and-a-half months since the Defendant was
extradited to, and first detained in, the United States.  This
is unquestionably a long period of incarceration for a defendant
who has been convicted of no crime.  The Second Circuit,
however, has found no constitutional violation in cases
involving substantially longer delays.  *See, e.g., United States*

4

*v. Swinton*, 797 F. App'x 589, 594 (2d Cir. 2019) (fifty-seven months); *United States v. Lane*, 561 F.2d 1075, 1078-79 (2d Cir. 1977) (fifty-eight months); *United States v. Cyphers*, 556 F.2d 630, 635-36 (2d Cir. 1977) (thirty-three months), *United States v. Fasanaro*, 471 F.2d 717, 717-18 (2d Cir. 1973) (over four years); *United States v. Saglimbene*, 471 F.2d 16, 17 (2d Cir. 1972) (six years); *United States v. Schwartz*, 464 F.2d 499, 504 (2d Cir. 1972) (four-and-a-half years); *see also Barker*, 407 U.S. at 533 (over five years).

As the defense notes, the length of delay should be assessed in light of the nature of the allegations, such as whether or not a defendant is charged with a violent crime. Because Zhukov is charged with non-violent offenses — namely, wire fraud, money laundering, and conspiracy to commit both — against various companies, defense counsel contends that "even if the delay was reasonable previously, it has now crossed a line." Def. Motion at 6, ECF No. 258. But the indictment alleges a complex scheme — that Zhukov used sophisticated computer programming and infrastructure around the world to defraud the digital advertising industry — and involves voluminous digital discovery. Indeed, defense counsel has recognized that this is an "enormously complex case with a huge amount of discovery that would present unique challenges in any circumstances." Def. Letter dated Dec. 14, 2020 at 1, ECF No.

188.   *Barker* instructs that where the case involves "complex
conspiracy charge[s]," as it does here, a longer delay can be
tolerated.   *Barker*, 407 U.S. at 531.

Moreover, the government has estimated that the
defendant faces a Sentencing Guidelines range, if convicted,
that is several multiples of the period of pre-trial
incarceration (at the least).   Gov't Letter dated Apr. 11, 2020
at 4 & n.2, ECF No. 98 (projecting that, if convicted, the
Defendant faces an advisory Guidelines range of 210 to 262
months' imprisonment, and explaining the calculation).

The defense also argues that Zhukov was in custody for
almost six months without any "movement on his case" and before
the government disclosed any discovery, thus attributing that
period of delay to the government.   Def. Motion at 2, ECF No.
258.   This delay may, indeed, have been attributable to the
government; but I need not decide that issue.   The defense did
not object contemporaneously to the pace of discovery at that
point.   And, in any event, those six months are a small fraction
of the overall delay, even if the defense argument is credited.

*The Reason for the Delay*.   The predominate cause of
delay remains the unprecedented Covid-19 pandemic — which is of
course not the prosecution's responsibility, and which I have
previously found to be a "valid" justification under *Barker*.
*See* October 27th Order at 6-7; *see also*, *e.g.*, *United States v.*

6

*Akhavan*, No. 20-CR-188, 2021 WL 797806 (S.D.N.Y. Mar. 1, 2021)

(delay due to the pandemic is "outside of the Government's

control"); *United States v. Foley*, No. 18-CR-333, 2020 WL

6198949, at *10 (D. Conn. Oct. 22, 2020) (delay caused by "the

Court's need to prepare for jury selection and trial amidst the

pandemic . . . strongly militate[s] against" finding a

constitutional violation); *see also United States v. Soto*, No.

18-CR-50050, 2021 WL 1176068, at *5 (D.S.D. Mar. 29, 2021)

(declining to dismiss the indictment because the reasons for

delay, including "trial preparation, substitution of counsel,

and the COVID-19 pandemic," were "legitimate and [did] not

involve the United States' bad faith").

    In addition, however, it bears mention that the delay

in this case was also occasioned in part by the defense.  The

Court and government were prepared to commence trial on November

23.  Criminal jury trials had resumed in this District as of

November, and nearby, a court in the Southern District conducted

a multi-week complex fraud trial, not dissimilar to this case.

*United States v. Petit*, No. 19-CR-850 (S.D.N.Y.) (three-week

trial of two defendants on securities fraud and other charges,

resulting in a verdict on November 19, 2020).  It is possible

that this trial could have been held five months ago, but for

former defense counsel's sudden and unanticipated withdrawal.

The Court does not, of course, begrudge the prior counsel for

their health and safety concerns and, indeed, understands

completely their hesitation about proceeding.  But until the

moment of their late withdrawal request, they had consistently

demanded the speediest trial available, with no indication

whatsoever that they might be unwilling to appear at such a

trial.  This omission was thus a contributing cause of the most

recent five-month delay.  The "reasons for delay" thus weigh in

favor of the government.

        *The Defendant's Assertion of His Right.*  The Defendant

has objected to delay on speedy-trial grounds since the onset of

the pandemic in April 2020, and has moved multiple times for

dismissal.  These objections are entitled "strong evidentiary

weight" in favor of the Defendant.  *Barker*, 407 U.S. at 531-32.

But even as they demanded a speedy trial, Mr. Zhukov's former

counsel repeatedly expressed doubt that they could be prepared

for that trial, even prior to November 2020.  In August 2020,

defense counsel explained that the Defendant had been largely

unable to review the voluminous digital discovery over the

preceding five months due to restrictions on in-person legal

visitation at the MDC.  *See* Aug. 17, 2020 Conference Transcript

19:2-4, ECF No. 113 (estimating that Defendant had reviewed

"approximately an eighth or maybe even a tenth of total

8

discovery").[3]   This was true even though the MDC had made efforts

to facilitate remote videoconferencing — an option that prior

counsel acknowledged having exercised only once in an

approximately six-month period.  *See* Oct. 21, 2020 Conference

Transcript 26:5-7, ECF No. 156.

And when in-person visitation resumed, the previous

defense team advised that no attorney on the team was willing to

meet with the Defendant in person due to health concerns.  *See*

Declaration of Andrew Mancilla ¶ 9, ECF No. 146-1.  Again, this

is understandable, in light of the severity of the pandemic; but

at the same time it is in tension, at least, with the defense's

assertion that they were ready to proceed to trial.  Finally, as

described above, the Court appointed new counsel in November,

who necessarily needed time to become familiar with this complex

case and prepare for trial.  The Defendant's assertion of his

right to a speedy trial must be considered against this

backdrop.

*Prejudice to the Defendant.*  The final factor,

prejudice to the defendant, is designed "(i) to prevent

oppressive pretrial incarceration; (ii) to minimize anxiety and

concern of the accused; and (iii) to limit the possibility that

the defense will be impaired."  *Barker*, 407 U.S. at 532.  The

---

[3]  The Defendant moved to be able to use an internet-disabled laptop at
the MDC to review discovery.  The Court granted that motion, with some
restrictions, on October 27, 2020.  *See* October 27th Order at 3-4.

Supreme Court in *Barker* emphasized that the "most serious" consideration in the prejudice analysis is this last one — impairment of the defense effort — "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Here, there is no question that the delay has been long enough to engender anxiety and concern. The Defendant has not, however, proffered any basis to conclude that the defense *case* has been impaired by the delay. There is no suggestion that any of the defense's witnesses have died or have otherwise become unavailable, that any witness will be unable to testify fully due to lapse of memory, or that evidence has been lost or destroyed. *See id*. at 534. The only defense-related prejudice suggested in the Defendant's brief is that the government made its first Rule 16 discovery production — consisting of seven terabytes of "digital images" of the Defendant's personal devices — six months after detaining him. *See* ECF No. 44. Regardless of the time it would have taken to create this production, a delay in discovery, in and of itself, is not enough to warrant dismissal. *See United States v. Anderson*, 902 F.2d 1105, 1110 (2d Cir. 1990) ("failure of the government to respond to discovery requests" did not prejudice the defendant, in light of only eight-month delay and other circumstances).

10

The prejudice the defense alleges is largely based on the conditions at the MDC before and during the pandemic, and the Defendant's status as a foreigner detained here.  As noted above, these are serious costs to bear for someone who is presumed to be innocent of the charges against him.  In combatting the spread of the virus, the MDC did enact extremely restrictive policies that, at times, rendered time spent in the general population more akin to solitary confinement.  Difficult as that period must incontrovertibly have been, however, Zhukov was not in a higher-risk category for Covid-19 exposure.  He is relatively young, has recently been vaccinated, and has not reported any significant health issues associated with the virus.

Courts generally have not found prison conditions to weigh heavily in favor of dismissal, even during the current pandemic.  *See, e.g.*, *Akhavan*, 2021 WL 797806, at *5 (no Sixth Amendment violation where the defendant argued he suffered prejudice due to "psychological trauma associated with incarceration during the pandemic"); *United States v. Kaetz*, No. 21-CR-71, 2021 WL 1251711, at *5-7 (D.N.J. Apr. 5, 2021) (the defendant's "general concerns of COVID-19 in prison" did not amount to "oppressive" incarceration under *Barker*); *see also United States v. Powell*, No. 95-CR-664, 1999 WL 32930, at *5 (S.D.N.Y. Jan. 21, 1999) (noting that "considerable anxiety

normally attends the initiation and pendency of criminal charges; hence, only 'undue pressures' are considered" (citing *United States v. Santiago-Becerril*, 130 F.3d 11, 23 (1st Cir. 1997)).  The reasoning of these cases is apposite here.

### III. Conclusion

For the foregoing reasons, the Defendant's motion to dismiss the indictment is denied.

SO ORDERED.

_/s Eric Komitee_____
ERIC KOMITEE
United States District Judge

Dated:    May 4, 2021
          Brooklyn, New York