# ZMO Law PLLC

September 28, 2021

*Via ECF and email*

Hon. Eric Komitee
Eastern District of New York
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

  RE: *U.S. v. Aleksandr Zhukov*, 18 Cr. 633

Dear Judge Komitee:

 This office represents Aleksandr Zhukov in the above-captioned matter. We write in further support of our motion for a judgment of acquittal pursuant to Rule 29 and in response to the government letter dated September 21, 2021. Contrary to the government's assertions, the evidence proffered is insufficient to prove that VertaMedia LLC (hereinafter "VertaMedia," which is the entity referred to in the government's letter as Verta Media) conspired with Mr. Zhukov to commit the fraud alleged in the Superseding Indictment. Accordingly, venue in the Eastern District of New York is not valid based solely on the location of VertaMedia's bank. Moreover, because it was not reasonably foreseeable to Mr. Zhukov that DoubleVerify would route ad data to a datacenter in Staten Island, the location of the datacenter does not confer venue on the Eastern District of New York.

**1. The government has not shown that VertaMedia and Mr. Zhukov conspired to commit wire fraud or money laundering.**

 In its letter, the government points to chat messages in an effort to show that VertaMedia and Mr. Zhukov were co-conspirators. ECF No. 399 at 2-4. However, these chats, without more, do not show a scheme to defraud or an agreement to engage in a scheme to defraud because they only show that Mr. Zhukov and VertaMedia were trying to get bot traffic past *filters*, not that they were trying to deceive any individual or company buying traffic from VertaMedia.

 As a preliminary matter, the government misconstrues the defense argument (which was accurately articulated by the Court at the oral argument) that Mr. Zhukov believed that advertisers wanted and benefitted from bot traffic because it was would improve their rankings on Alexa, Google Analytics, and possibly other tracking and ranking systems. ECF

260 Madison Avenue, 17th Floor • New York, NY 10016
(212) 685-0999 • info@zmolaw.com
www.zmolaw.com

No. 399 at 1-2, f.n. 1. The government argues, however, that Mr. Zhukov's traffic would have had no impact because he was spoofing websites; but Mr. Zhukov's point was not that the publishers hosting ads would benefit, but that purchasers of his traffic would use his non-human impressions to impact tracking algorithms (such as Google Analytics), generate buzz (through website counters like Alexa), and for other legitimate reasons. *See e.g.* Tr. 2677:23-2679:19 (Testimony of Mr. Zhukov). It is not that Mr. Zhukov understood that his bots would affect Alexa and Google Analytics for the websites he spoofed, but rather for the websites of advertisers who purchased his traffic. *See also* Tr. 858:23-860:5 (Testimony of Kristin Rohlfing that Nestle prefers to appear at the top of google search responses, and that clicks on websites are one of the factors that decide how high a specific website appears in response to a google search query).

In this context, the chats between Mr. Zhukov and employees of VertaMedia can, and should, be understood to reflect Mr. Zhukov's desire to work with VertaMedia to get past filters, such as DoubleVerify, MOAT and WhiteOps, rather than to deceive advertisers. Most of the chats cited by the government—including government exhibits 637TE, 682, 1619T 1635TE, 1694, 2106, and 2200—relate to VertaMedia and Mr. Zhukov working together to bypass filters. Mr. Zhukov has never denied that he sought to bypass filters, since the bot clicks he sold would have been worthless if they could not pass through such filters; but, we submit, even an agreement to bypass, or "fuck over" a filter does not amount to wire fraud conspiracy. Rather, seeking to trick the *purchaser* of bot traffic would be fraud, and since no one from VertaMedia testified, there is no evidence in the trial record of a conspiracy to deceive anything other than the filters.

The other chats cited by the government do not show that the participants believed advertisers did not want to buy bot traffic, but rather that they did not want to buy traffic that was obviously bots, because such traffic would not achieve their goals of generating buzz and impacting the algorithms. For example, the chat discussing a desire "to avoid getting caught" as well as the chat regarding a potential "scandal" with advertisers may simply reflect an acknowledgement that if the general public learned an advertiser was inflating their metrics, there might be a scandal. *See* GX 2106; GX 1683TE. But this kind of diffuse sharp practice in the advertising industry falls far short of wire fraud. Similarly, the discussion of charge backs is unsurprising in that impressions later caught by filters would not earn advertisers the desired results, even if they knew they were purchasing bots; thus advertisers, even those who wanted bots, would not willingly purchase bots which failed to bypass filters. *See* GX 1635TE.

To further complicate interpretation of the cited chats, without context provided by VertaMedia, it is unclear who Mr. Zhukov and the various employees of VertaMedia are discussing when they discuss "advertisers" in these chats. As Mr. Denisoff explained, when he discussed having contact with "advertisers" he meant "other ad networks that would buy traffic for their own purpose." Tr. 1152:13-016; *see also* Tr. 1101:13-16 (explaining Mr. Denisoff had no direct contact with advertisers and when he used that term he meant ad

networks). Mr. Denisoff's testimony was crucial for laying the foundation necessary to understand his chats with Mr. Zhukov and to meet the burden of proof to show a conspiracy to commit wire fraud between Mr. Denisoff and Mr. Zhukov.

In contrast, without testimony from VertaMedia to show that agents of VertaMedia conspired with Mr. Zhukov to defraud unknowing advertisers rather than simply bypass filters, the evidence is insufficient to show that VertaMedia was a co-conspirator of Mr. Zhukov. Absent a finding that VertaMedia is a co-conspirator of Mr. Zhukov,[1] the fact that VertaMedia banked out of Brooklyn is irrelevant to any finding of venue.

2. **DoubleVerify's datacenter on Staten Island does not confer venue on the Eastern District of New York.**

As noted by the government in their letter, "venue will lie if a reasonable jury could find that it was 'more probable than not' that the defendant 'reasonably could have foreseen' that part of the offense would take place in the district of prosecution." *United States v. Kirk Tang Yuk*, 885 F.3d 57, 69-70 (2d Cir. 2018). ECF No. 399 at 5. The government has failed to make this showing with respect to DoubleVerify's Staten Island datacenter. The fact that Mr. Zhukov was focused on bypassing the filters of DoubleVerify and researched such issues, does not make it "more probable than not" that Mr. Zhukov would have "reasonably foreseen" that DoubleVerify was headquartered in New York, let alone that their datacenter was in Staten Island.

The Court was correct to inquire whether information about DoubleVerify's website was offered at trial; while this specific evidence is not required, *some* evidence beyond mere speculation is required to show that Mr. Zhukov's research was of a kind that would make it more likely than not that he would learn that DoubleVerify conducted activity in New York City. In making this argument, the government is asking the Court to speculate, without basis, about Mr. Zhukov's knowledge of the headquarters of DoubleVerify and the location of its datacenter. As the Court noted in its instructions to the jury, "[a]n inference is not a suspicion or guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that you know exists." Tr. 3443:3-5. Absent information on how widely DoubleVerify publicized its headquartering in New York City or its datacenter on Staten Island, there are no facts in the record to give rise to a reasonable inference that it was more

---

[1] The government quoted Mr. Margulis-Ohnuma to suggest the defense conceded that Mr. Zhukov was a co-conspirator of VertaMedia. ECF 399 at 5. But the context of the quoted language in Mr. Margulis-Ohnuma's summation reveals that he was actually arguing that Mr. Zhukov's customers knew they were buying bots, and that the jury should find that VertaMedia specifically knew it was buying bots since the government, by virtue of calling them a co-conspirator, conceded that VertaMedia had such knowledge. *See* Tr. 3316:6-24.

ZMO LAW PLLC

probable than not that Mr. Zhukov had the requisite knowledge to confer venue via DoubleVerify's datacenter in Staten Island.

Furthermore, as described in the defense's initial motion, DoubleVerify's transfers of data from the closest datacenter to Staten Island were not "in furtherance" of the conspiracy or caused by Mr. Zhukov. *See* ECF No. 380 3-4; *see also* Tr. 1682:2-20 (Testimony by DoubleVerify witness Nisim Tal). At oral argument, AUSA Komittareddy argued that this transfer was akin to a telephone call pinging off a local cell tower; however, there is no testimony in the trial record to support that claim. Tr. 41:24-42:9 The only testimony on this topic is Mr. Tal stating:

> **[I]magine that user John is…somewhere in…Texas using his computer getting into some website. He is getting ads. So the first thing the data is being collected in the environment where this John sits—resides. So, we are collecting the data and then we are sending it to the closest datacenter that we operate. And DoubleVerify, DV, has several datacenters. We have two in California, one in New York, two in Newark, over in APAC—Asia-Pacific, sorry. So, from the machine of the desktop of the user, it goes to the closest datacenter. If you're talking about Texas, probably the closest datacenter will be on the west coast. And from there all of the data is being copied to our primary data warehouse in New York, in Staten Island. Tr. 1682:6-20.**

Mr. Tal's testimony is inconsistent with the government's argument that this transfer of data is like a phone call passing through cell towers. He specifically says that the data is "copied" and then sent from one datacenter to another *by DoubleVerify*. Thus, the only evidence available in the trial record suggests a specific action by DoubleVerify, not Mr. Zhukov. DoubleVerify sends the data coming from Mr. Zhukov's servers in Texas from California to Staten Island. Thus, even if Mr. Zhukov knew of the datacenter in Staten Island (which there is no evidence to support), he did not *cause* these wires to be sent nor were they sent *in furtherance of* his conspiracy since DoubleVerify sought to prevent bots such as Mr. Zhukov's.

For these reasons, as well as the reasons detailed in the defense filing on June 30, 2021,[2] Mr. Zhukov's motion for an acquittal on all counts should be granted in its entirety.

---

[2] The government in a footnote re-iterates its claim that every communication into and out of Manhattan necessarily travels through the Eastern District of New York. As discussed in

Thank you for your attention to this case.

Very truly yours,

*Zachary Margulis-Ohnuma*

Zachary Margulis-Ohnuma

CC: All Counsel (via ECF and email)

---

the initial defense filing, there is insufficient evidence in the trial record to support this assertion. ECF No. 380 at 6-7.