UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------x
                         :

 UNITED STATES OF AMERICA,     :

                         :

                         :

                         :

         v.              :       Docket No. 18-CR-633(EK)

                         :

ALEKSANDR ZHUKOV,        :

                         :

                         :

------------------------------------------------------x

## MOTION FOR MODIFICATION OF SENTENCE PURSUANT TO 18 U.S.C. 3582(c)(1)(A)

COMES NOW ALEKSANDR ZHUKOV, ("Defendant"), by and through his undersigned counsel, respectfully moves this Court for an Order granting his motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i) and Amendment 814 to U.S.S.G. 1B1.13, by imposing a one-day (or other nominal) term of supervised release in addition to his current term of incarceration.

## I. FACTUAL BACKGROUND

Defendant Aleksandr Zhukov was arrested on November 6, 2018, in Bulgaria, and on January 18, 2019, extradited to the United States as a result of a thirteen-count indictment filed on November 27, 2018. Exhibit 1. On May 29, 2021, Mr. Zhukov was found guilty, followed by 4-week jury trial, for the following crimes: Count 1: Wire Fraud Conspiracy in violation of 18 U.S.C. §§1349 and 1343; Count 2: Wire Fraud in violation of 18 U.S.C. $1343; Count 3: Money Laundering Conspiracy in violation of 18 U.S.C. §1956(h) and §1956(a)(1); Count 4: Money Laundering - Unlawful Monetary Transactions pursuant to 18 U.S.C. §§1957(a) and 1957(b). On November 11, 2021, Mr. Zhukov was sentenced by this Court to 10 years. Exhibit 2.

Critically, Mr. Zhukov requests that the Court impose a one-day term of supervised release in addition to his current term of incarceration because he has participated in numerous recidivism-reducing programs created under the First Step Act ("FSA"), but currently, he cannot apply

credits earned through these programs toward early release because the Court did not originally sentence him to any supervised release. If the Court were to sentence him to some amount of supervised release, he could apply his FSA credits to his current term of incarceration, thus effectively reducing his sentence.

## II. APPLICABLE LAW

18 U.S.C. § 3582(c)(1)(A)(i) permits modification of Mr. Zhukov's term of imprisonment, "after considering the factors set forth in 18 U.S.C. §§3553(a) to the extent that they are applicable," if "extraordinary and compelling reasons warrant such a" modification and that such a modification is "consistent with applicable policy statements issued by the Sentencing Commission." In addition, Mr. Zhukov's requested relief is consistent with Amendment 814 of policy statements in U.S.S.G. §§1B1.13, which "sets forth the circumstances under which an extraordinary and compelling reason for compassion release or sentence reduction would exist."

Section 3582(c)(1)(A), newly amended as of November 1, 2023, requires the Court to find that granting the relief a defendant seeks would be consistent with the policy statement in U.S.S.G. § 1B1.13, which in turn "sets forth the circumstances under which an extraordinary and compelling reason for compassionate release or sentence reduction would exist." United States v. Feliz, No. 16-CR-809, 2023 U.S. Dist. LEXIS 213357, 2023 WL 8275897, at 4 (S.D.N.Y. Nov. 30, 2023).

That policy statement offers several examples of what might constitute "extraordinary and compelling circumstances" - medical circumstances, age, family circumstances, or abuse by BOP personnel—but also includes a catchall provision for "any other circumstance" that is "similar in gravity" to those specifically named. U.S.S.G. § 1B1.13(b). In adopting this amendment, the Sentencing Commission expressly rejected a requirement that reasons falling within the catchall provision "be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity." U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 207 (Nov. 1, 2023), www.ussc.gov/sites/default/files/pdf/guidelines-manual/2023/APPENDIX (emphasis

added).

Further, the relevant legal authority is applicable to the fact-specific circumstances underlying the request here. The FSA allows certain incarcerated individuals to earn credits by participating in "recidivism reduction programs" and to apply those credits "toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). "The effect of this provision for some prisoners is early release from incarceration and a concomitant transition into post-release supervision." In re United States, No. 01-CR-619, 2023 U.S. Dist. LEXIS 225899, 2023 WL 8759830, at *2 (S.D.N.Y. Dec. 19, 2023). Using FSA credits, an incarcerated individual may be transferred to supervised release as early as twelve months ahead of schedule "[i]f the sentencing court included as part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3624(g)(3).

An alien inmate is ineligible to apply his credits toward early release only if he is "the subject of a final order of removal." 18 U.S.C. § 3632(d)(4)(E)(i). Previously, the Bureau of Prisons ("BOP") precluded incarcerated individuals who were subject to ICE detainers from applying FSA credits toward early release; on February 6, 2023, however, it changed this policy, clarifying that only those who are subject to final orders of removal are prohibited from applying their credits. See U.S. Dep't. of Justice, First Step Act of 2018 - Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4), https://www.bop.gov/policy/progstat/5410.01_cn2.pdf.

Notably, the statute authorizes courts to modify a defendant's term of imprisonment after "the lapse of 30 days from the receipt of such request by the Warden of the defendant's facility", whenever "extraordinary and compelling circumstances warrant such reduction." 18 U.S.C. § 3582(c)(1)(A).

Here, Mr. Zhukov submitted his request for "compassion release" to the Warden at LSCI Allenwood on September 29, 2024. See Exhibit 3. Subsequently, Mr. Zhukov never received any response from Warden. Therefore, the statutory exhaustion requirement has been met.

### III. EXTRAORDINARY AND COMPELLING REASONS WARRANT GRANT OF MR. ZHUKOV'S REQUEST FOR SENTENCE MODIFICATION

When the Court sentenced Mr. Zhukov, it did not order any supervised release because of the likelihood that he would eventually be deported. Indeed, the Federal Sentencing Guidelines provide that "[t]he court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute" and the noncitizen defendant "likely will be deported after imprisonment." U.S.S.G. § 5D1.1(c). The Second Circuit has held, however, that this provision does not categorically bar district courts from imposing supervised release where it is appropriate given "the facts and circumstances of a particular case." United States v. Alvarado, 720 F.3d 153, 155 (2d Cir. 2013) (quoting United States v. Valdavinos-Torres, 704 F.3d 679, 693 (9th Cir. 2012)).

Here, the combination of factors set forth in 18 U.S.C. § 3553(a), weighs in favor of modifying Mr. Zhukov's sentence to add a term of supervised release. Section 3553(a)(2) emphasizes "the need for the sentence imposed . . . to protect the public from further crimes of the defendant[,] and . . . to provide the defendant with needed educational or vocational training . . . in the most effective manner." Because Mr. Zhukov is currently ineligible to apply FSA credits toward early release, he is not incentivized to participate in the FSA's "evidence-based recidivism reduction programming and productive activities." 18 U.S.C. § 3632(b). Granting his request—and thereby making him eligible to apply FSA credits toward early release—would incentivize him to participate in rehabilitative programming and decrease the likelihood that he would commit "further crimes." See United States v. Oprea, 2023 U.S. Dist. LEXIS 18864, 2023 WL 6958690, at 3 ("Absent such relief, one would expect that inmates without a term of supervised relief will be less likely to participate in such programs, to the detriment of society as a whole."). As such, this factor, therefore, weighs heavily in favor of modifying Mr. Zhukov's sentence.

In addition, Section 3553(a)(6) emphasizes "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Currently, any defendant with a similar record who was found guilty of similar conduct and sentenced to supervised release is eligible to apply FSA credits toward early release and, as a result, may be released from incarceration as many as twelve months earlier than Mr. Zhukov. See 18 U.S.C. § 3624(g)(3).

As a result, the only difference between such a defendant and Mr. Zhukov would be that the other defendant was sentenced to supervised release because he or she is not a noncitizen who "likely will be deported after imprisonment." U.S.S.G. § 5D1.1(c). A twelve-month sentencing disparity between defendants who are similarly situated in all respects other than their immigration status is certainly unwarranted. This factor, therefore, also weighs heavily in favor of modifying Mr. Zhukov's sentence.

Further, extraordinary and compelling circumstances warrant the modification that Mr. Zhukov is seeking. He is unable to earn credit for participation in recidivism-reducing activities solely because the Court did not sentence him to any supervised release because he would likely be deported after imprisonment.

While the BOP database erroneously indicates that he is subject to a final order of removal, upon information and belief, Mr. Zhukov is NOT subject to a final order of removal as he never signed a waiver nor ever appeared before an immigration judge with respect to his removal proceedings.

It should be noted that the BOP has clarified that individuals subject only to ICE detainers are eligible to apply FSA credits toward their early release. See U.S. Dep't of Justice, First Step Act of 2018 - Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4), https://www.bop.gov/policy/progstat/5410.01_cn2.pdf.

Therefore, there is a significant difference between an individual's possible eventual deportation and a final order of removal. See Roldan v. Racette, 984 F.2d 85, 88 (2d Cir. 1993) (describing the "clear majority view" that an ICE detainer "does not result in present confinement" by

ICE, but is merely "a notice that future [ICE] custody will be sought at the conclusion of a prisoner's pending confinement by another jurisdiction"); Bell v. INS, 292 F. Supp. 2d 370, 373-74 (D. Conn. 2003) ("Unlike a final order of removal, a detainer is not a definitive decision regarding deportation or an order that will necessarily result in [ICE] taking [a prisoner] into custody . . . . A detainer is more of a notice.").

Thus, Mr. Zhukov's immigration status should not preclude him from earning and applying for FSA credits as long as he is subject to only an ICE detainer, if any. Indeed, to subject him to more incarceration merely because of his immigration status would be "similar in gravity" to a refusal to reduce the term of imprisonment for an individual with a serious health condition or extenuating family circumstances. U.S.S.G. § 1B1.13(b).  Under similar circumstances, in United States v Sanchez, No. 16-CR-661-1 (ARR), 2024 U.S. Dist. LEXIS 43529, at 13 (E.D.N.Y. Mar. 12, 2024), the Court explained that "an individual's possible future deportation is [not] relevant to whether he should presently be eligible to apply FSA credits toward early release; likewise, I do not think that the mere fact that an individual may later be deported lessens any injustice in effectively requiring him to serve a longer sentence than an otherwise similarly situated individual who faces no such risk."

In fact, several courts have agreed with this reasoning and granted similar requests. See e.g, Sanchez, 2024 U.S. Dist. LEXIS 43529 (granting motion under 18 U.S.C. § 3582(c)(1)(A)(i) requesting adding a one-day term of supervised release); United States v. Nunez- Hernandez, No. 14-CR-20, 2023 U.S. Dist LEXIS //5/78, 2023 WL 3166466, at 1 (D. Minn. Apr. 27, 2023) (granting relief under Section 3582 (c)(1)(A)  to add one month of supervised release to the defendant's sentence); United States v. Oprea, No. 11-CR-64, 2023 U.S. Dist. LEXIS 188648, 2023 WL 6958690, at 4 (D.N.H. Oct. 20, 2023) (granting relief under Section 3582 and modifying sentence to add supervised release); United States v. Nienadov, 2023 U.S. Dist. LEXIS 107812, 2023 WL 4139026 (S.D. Texas June 21, 2023) (reducing petitioner's incarcerative sentence by one month and adding a one-year period of supervised release so that he might benefit from the provisions of the First Step Act).

Third, Amendment 814 of U.S.S.G. Section 1B1.13(d) states that rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted. Here, Mr. Zhukov did not receive any infraction during his incarceration (over 6 years) and participated in multiple programs, despite the fact he is ineligible to apply his First Step Act time credit. See Exhibit 4. While in prison, he received a GED diploma and finished the International Sport and Science Association course, part of which is a CPR (cardio-pulmonary resuscitation) training that could possibly save lives in the future.

Finally, compassion release is appropriate only when the "defendant is not a danger to the safety of any other persons or to the community, as provided in 18 U.S.C. §3142(c)." Mr. Zhukov's offence was not a violent one. He has no violent criminal history, and it was his first offense. His loving and caring family includes a wife and a daughter. Nothing in the record indicates that he poses any threat to the community. The BOP Custody Classification and Recidivism Risk Assessment shows that he is unlikely to commit any further crimes. See Exhibit 5 and 6.

Last but not least, Mr. Zhukov completed the majority of his sentence. See Exhibit 7, See also United States v. Resto, No. 08-CR-757 (DC), 2021 WL 1109467, at 3 (S.D.N.Y. Mar. 23, 2021) ("[C]ourts have found that compassion release for defendants who have served the significant majority, at least two-third, of their sentence may not undermine sentencing goals.") Here, Mr. Zhukov does not ask the Court to immediately release him from incarceration, and only seeks to convert one month of his actual sentence to one year of supervised release.

Critically, the denial of the relief requested would prevent "the goals of the First Step Act from being fully realized." See United States v. Ruvalcaba, 26 F.4th 14, 26 (1st Cir. 2022) ("Congress recognized the need for a 'safety valve' with respect to situations in which circumstances had changed such that the length of continued incarceration no longer remain equitable."); cf. Setser v. United States, 566 U.S. 231, 242-43, 132 S. Ct. 1463, 182 L.Ed 2d 455 (2012) (noting that "when the

district court's failure to anticipate developments that take place after the first sentencing produces unfairness to the defendant," Section 3582(c)(1)(A) "provides a mechanism for relief.")

Notably, Mr. Zhukov also plans to seek political asylum upon release to the custody of the ICE due to his political opinion of the war between Russia and Ukraine. Such development would put him in prolonged detention in an immigration facility, and granting relief would partially mitigate his additional incarceration.

## CONCLUSION

Based on the foregoing, Mr. Zhukov respectfully requests to modify his sentence by adding one day of supervised release.

Dated: March 10th, 2025
        Brooklyn, NY

                                            Respectfully submitted,


                                            /s/ Igor Litvak, Esq.
                                            _____
                                            Igor B. Litvak
                                            Attorneys for Mr. Zhukov
                                            The Litvak Law Firm
                                            1733 Sheepshead Bay Rd., Suite 22
                                            Brooklyn, NY 11235
                                            Tel/Fax: 718-989-2908
                                            Email: Igor@LitvakLawNY.com