UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

UNITED STATES OF AMERICA,

                                                                **MEMORANDUM & ORDER**

              -against-                                  18-CR-633(EK)

ALEKSANDR ZHUKOV,

                      Defendant.

-------------------------------------x

ERIC KOMITEE, United States District Judge:

       In May 2021, a jury convicted Aleksandr Zhukov of wire fraud, money laundering, conspiracy to commit wire fraud, and conspiracy to commit money laundering. The Court sentenced Zhukov to 120 months' incarceration. He now petitions to vacate his sentence under 28 U.S.C. § 2255, claiming that his counsel was constitutionally ineffective both at trial and sentencing. He also moves for compassionate release under 18 U.S.C. § 3582. Zhukov is representing himself.

       With respect to his Section 2255 motion, Zhukov largely claims that his counsel rendered constitutionally ineffective assistance because he failed to object to the admission of certain exhibits at trial, and later failed to cite Zhukov's non-citizen status as grounds for leniency at sentencing. With respect to his compassionate release motion, Zhukov requests that the Court add a one-day term of supervised

release to his sentence, arguing that this will make him eligible for earned-time credits under the First Step Act and thereby effectively reduce his overall sentence.

For the reasons that follow, Zhukov's motions are both denied.[1]

## I. Background

The Court assumes the parties' familiarity with the facts of this case, and recites only those details relevant to Zhukov's motions.

### A. The Offense Conduct

Zhukov ran a company called MediaMethane. *See* Presentence Investigation Rep. ¶ 21, ECF No. 385 ("PSR"). MediaMethane was — ostensibly — a digital video advertising network. *Id.* Through arrangements with other advertising networks, MediaMethane purportedly placed digital video advertisements on the websites of major digital publishers, and it was paid based on traffic to those advertisements. *Id.*

In actuality, MediaMethane mostly placed those advertisements on blank webpages. *Id.* ¶¶ 22-23. It then rented out more than 2,000 servers in Texas and the Netherlands, using them to direct swarms of bot traffic to the advertisements. *Id.*

---

[1] Because both the "motion and the files and records of [this] case conclusively show that [Zhukov] is entitled to no relief," the Court declines to hold a hearing on Zhukov's Section 2255 petition. *See* 28 U.S.C. § 2255(b).

2

¶ 22.  The servers did not broadcast their own IP addresses, but rather drew on a list of IP addresses that resembled addresses associated with major internet service providers.  *Id.* ¶ 31.  Zhukov and his co-defendants programmed the bots to simulate human behaviors, such as scrolling through a webpage or pausing a video.  *Id.* ¶ 24.  MediaMethane thereby created the illusion that humans — not bots — were seeing a given advertisement.  *Id.* ¶¶ 24-25.  In essence, Zhukov and his co-conspirators figured out how to print money by exploiting weaknesses in fraud-detection software on which the digital advertising industry relies.  This scheme (which the government referred to as "Methbot") brought in more than $7 million in fees from major brands.  *Id.* ¶ 35.

In December 2016, a cybersecurity firm in New York City published a report on MediaMethane (the "White Ops Report").  *Id.* ¶ 36.  The report described how Methbot worked.  *Id.*  It also appended a list of IP addresses associated with the Methbot servers.  *Id.*  Zhukov was later arrested in Bulgaria and extradited to the United States to stand trial.  *Id.* ¶ 38.

**B.   The Trial**

In May 2022, Zhukov's trial began.  On its direct case, the government called FBI contractor and computer scientist Lena Loewenstine to testify about her analysis of several Methbot servers.  *See* Trial Tr. 400:8-402:4.

Loewenstine testified that each server ran a custom web browser called the Methanum Browser. *Id.* at 405:18-20, 408:2-4. The Methanum Browser would broadcast an IP address from a preset list as the address associated with the server. *Id.* at 430:4-431:7. This made it appear as if Methbot traffic was comprised of people from all over the country, rather than bots operating from a server farm. *Id.* at 431:15-434:2 (Methanum browser would broadcast the location and time zone associated with the selected IP address); PSR ¶ 31 (selected IP addresses resembled those associated with major internet service providers).

Zhukov's counsel asked about a list of IP addresses on cross-examination. He asked Loewenstine: "If we had a long list of IP addresses and we're told . . . these are all IP addresses associated with the Methanum computers, it doesn't mean those are the real IP addresses of the Methanum computers, does it?" *Id.* at 608:8-11. The government understood Zhukov's counsel to be casting doubt on the credibility of the list of IP addresses appended to the White Ops Report, notwithstanding that neither the White Ops Report nor the appendix of IP addresses had been introduced. *See id.* at 613:3-5 ("Counsel asked about the list of IPs. He's, obviously, asking about the White Ops list."). So, on redirect, the government introduced that list — but not the report itself — into evidence as Government Exhibit 1 ("GX 1"). *See id.* at 612:15-618:7. Apart from requesting a limiting

4

instruction that is not at issue here, Zhukov's counsel did not object to admission.[2]  *Id.* at 617:2-6.  Loewenstine then testified that "almost all of the IP [addresses]" she found on the Methbot servers also appeared in GX 1.  *Id.* at 616:14-617:1.

The jury eventually convicted Zhukov on all four counts against him.  *See* Jury Verdict, ECF No. 369.

## C. The Sentencing Proceeding

Sentencing occurred on November 10, 2021.  *See* Sentencing Tr. 1, ECF No. 425.  Zhukov's counsel urged a sentence of thirty-six months.  I*d.* at 39:23-40:2; *see also* Def.'s Sentencing Mem. 25-26, ECF No. 393.  This was considerably below the Guidelines range of 210 to 262 months.  *See* Sentencing Tr. 28:25-29:1.  Zhukov's counsel offered several reasons for imposing a below-Guidelines sentence.  One was that, as a foreign citizen, Zhukov would likely have "access to minimal or no programming" to reduce his sentence, such as the Residential Drug Abuse Program ("RDAP").  Def.'s Sentencing Mem. 33-34.

The Court ultimately sentenced Zhukov to 120 months in prison.  Sentencing Tr. 80:13-19; Judgment 3, ECF No. 427.

---

[2] Zhukov's counsel did initially object to admission of GX 1. *See* Trial Tr. 612:15-18.  However, in a subsequent sidebar, he retracted that objection, indicating that he had misunderstood which exhibit the government was submitting into evidence.  *See, e.g.*, *id.* at 613:12-14 ("My objection is that the testimony was about a different list.  It was about a different exhibit."); *id.* at 614:20-21 ("I wasn't talking about the list that [government] counsel is talking about.").

5

Zhukov appealed his conviction and sentence to the Second Circuit, which affirmed both in a summary order. *United States v. Zhukov*, No. 21-2981, 2023 WL 3083284 (2d Cir. Apr. 26, 2023).[3] Zhukov's trial counsel represented him on direct appeal, and (unsurprisingly) did not make the ineffective-assistance arguments that Zhukov now presses on collateral review. *Id.*; *see also* Mot. to Vacate 2-4, ECF No. 448.

D.   **The Instant Motions**

Zhukov filed the instant Section 2255 petition on July 22, 2024.[4] *See* Mot. to Vacate 13. The petition was timely because Zhukov filed it within one year of the "date on which the judgment of conviction bec[ame] final." 28 U.S.C. § 2255(f)(1). The judgment of conviction became final on July 25, 2023, or ninety days after the Second Circuit denied Zhukov's appeal. *See Clay v. United States*, 537 U.S. 522, 525 (2003) (when a petitioner seeks direct appeal of a conviction, the conviction becomes "final" under Section 2255 when the period to seek certiorari elapses); Sup. Ct. R. 13 (appellant has ninety days from judgment to seek certiorari).

---

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

[4] A prisoner's Section 2255 petition is considered filed when he places it into the prison mailing system. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Zhukov attests that he submitted his petition to the prison mailing system on July 22, 2024, and the government does not dispute this.

6

While the Section 2255 petition was pending, Zhukov filed a separate motion for compassionate release. ECF No. 454. The Court now addresses both motions together.

## II.  The Section 2255 Petition

**A.  Legal Standard**

Under Section 2255, a "prisoner in custody under sentence of a [federal] court . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The court must vacate the sentence if "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b).

Zhukov argues that his counsel was constitutionally ineffective under the Sixth Amendment. *See* Mot. to Vacate 4-9, 14-23. To prevail on an ineffective assistance claim, a Section 2255 petitioner must show by a preponderance of the evidence that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) there is a "reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *see also Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000)

(noting preponderance standard).[5]  A court need not address these prongs in order.  When it is "easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  *Strickland*, 466 U.S. at 697.

Ordinarily, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice."  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  This general rule does not apply here, however: the "failure to raise an ineffective assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under [Section] 2255."  *Id.* at 509.

**B.   Discussion**

Because Zhukov is proceeding *pro se*, the Court construes his petition as "rais[ing] the strongest claims that it suggests."  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).  Zhukov argues that his counsel was ineffective because he (1) did not object to, or thoroughly investigate, the White Ops Report and GX 1, *see* Mot. to Vacate at 4-5, 6-22, and

---

[5] When a petitioner cites ineffective assistance of counsel to obtain federal habeas relief from a state court judgment under Section 2254, judicial review of counsel's performance is "doubly deferential."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  But that more lenient standard does not apply here, because Zhukov seeks to vacate a *federal* court judgment under Section 2255.  *See Johnson v. Genovese*, 924 F.3d 929, 940 (6th Cir. 2019).

8

(2) did not argue for leniency at sentencing based on Zhukov's non-citizen status.  *See id.* at 23.

1. The White Ops Report and GX 1

Zhukov first asserts that his counsel was deficient for not thoroughly investigating, and therefore not objecting to, either the White Ops Report or GX 1.  *See id.* 4-9, 14-22.  These related arguments fail.

Zhukov omits a crucial fact: the government never offered the White Ops Report itself into evidence.  The report was not on the government's exhibit list.  *See generally* Gov. Exhibit List, ECF No. 304.  And the government disavowed any intention to introduce it.  Trial Tr. 493:1-4 ("We're not looking to put in the [White Ops] [R]eport . . . . We're not looking to rely on hearsay or rely on that report in any way for the truth.").  Because the White Ops Report was never offered (let alone admitted), Zhukov's counsel did not act unreasonably by failing to investigate it or object to its admission.

Zhukov's argument about GX 1 fares no better.  At the outset, while Zhukov repeatedly insists that his counsel should have "investigated" GX 1, he never explains what such an investigation would have entailed or revealed.  And it is well-settled that a "claim of ineffective assistance must contain specific factual contentions regarding *how* counsel was ineffective."  *Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355

(N.D.N.Y. 2013) (emphasis added) (collecting cases). Because Zhukov provides no specific facts about what the unpursued investigation would have revealed, he cannot establish that his counsel was deficient.

Zhukov also fails to explain how the introduction of GX 1 prejudiced him. GX 1 consists simply of a list of IP addresses, with virtually no accompanying text. *See* GX 1 (appended to this order). The Methbot servers used these IP addresses to make bot traffic look more like human traffic. *See, e.g.*, Trial Tr. 616:14-617:1; PSR ¶ 31. But evidence of these IP addresses cannot have prejudiced Zhukov for a simple reason: he *openly admitted* that the purpose of Methbot was to make bot traffic look like human traffic. In his opening statement, Zhukov's counsel argued that MediaMethane sold an "emulation" of human traffic. *See* Trial Tr. 59:13-24. He went on to argue that Zhukov's clients were aware of this fact, and therefore had not been defrauded. *See id.* at 63:10-11. Because GX 1 buttressed a conclusion Zhukov was not disputing, its admission did not prejudice him.

Even assuming GX 1 prejudiced Zhukov, he has not offered any meritorious basis on which his counsel could have objected to its admission. Counsel does not perform unreasonably by failing to offer a meritless objection. *See United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999). Here,

10

Zhukov suggests that his counsel could have objected to GX 1 as both "highly prejudicial" and as hearsay. Mot. to Vacate 5, 15. Neither objection would have prevailed. Zhukov never explains why GX 1 was *unfairly* prejudicial under Federal Rule of Evidence 403. *See Constantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be *unfair*."). And as the Court of Appeals held on direct appeal of this case, GX 1 was not introduced for a hearsay purpose, because it "merely was used to cross-reference the IP addresses that Loewenstine identified as coming from Zhukov's server," rather than to independently assert that those IP addresses were associated with the Methbot servers. *Zhukov*, 2023 WL 3083284, at *2; *see also* Fed. R. Evid. 801(a) (a hearsay "statement" is one that is "intended . . . as an assertion").

Finally, even if GX 1 were somehow prejudicial, and even if Zhukov's counsel erred by failing to object to its admission, Zhukov's argument would *still* fail. Under *Strickland*, a court looks to the "cumulative weight of [counsel's] error[s]" to determine if prejudice "reached the constitutional threshold." *Lindstadt* v. *Keane*, 239 F.3d 191, 202 (2d Cir. 2001). Put simply, "the stronger the case, independent of the error, the less likely relief." *Davis v. Lee*, No. 10-CV-5132, 2011 WL 2610395, at *8 (E.D.N.Y. July 1,

11

2011). Here, GX 1 was fairly sterile in both appearance and format, and its contents were cumulative of other evidence. Loewenstine had already identified the IP addresses associated with the Methanum Browser through her analysis of the Methbot servers. *See* Trial Tr. 431:1-7; 616:21-617:1. And in later testimony, a White Ops employee — Dimitris Theodorakis — testified that White Ops had extracted a list of IP addresses that also matched the addresses on GX 1. *See* Trial Tr. 687:19-689:21; 750:8-751:17. So, the government already had considerable evidence showing that the Methbot servers broadcast hundreds of randomly-selected IP addresses. That means GX 1 was "icing on an otherwise wholly-sufficient prosecution case," and that its admission cannot have been sufficiently prejudicial under *Strickland*. *Wilson v. Van Buren*, No. 07-CV-3567, 2010 WL 3260461, at *9 (S.D.N.Y. July 19, 2010).

Zhukov's ineffective assistance arguments as to the White Ops Report and GX 1 fail.

2. Zhukov's Non-Citizen Status

Zhukov next argues that his counsel should have sought a sentence reduction based on Zhukov's non-citizen status. *See* Mot. to Vacate 23. The thrust of this argument is that, as a deportable non-citizen, Zhukov's term of imprisonment is effectively longer than an identical sentence for a citizen, because only the citizen can access programs that will

12

retroactively reduce his or her sentence.  Specifically, Zhukov claims that he cannot access programs like (1) time credits under the First Step Act, (2) community reentry under the Second Chance Act, and (3) early release under RDAP.  *Id.; see also Zelaya-Romero v. United States*, No. 22-CV-1853, 2023 WL 3001871, at *5 (S.D.N.Y. Apr. 19, 2023) ("Deportable non-citizens are expressly precluded from eligibility under the First Step Act.").  Therefore, he argues, his counsel acted deficiently by not seeking a sentence reduction that would eliminate this effective sentencing disparity between Zhukov and a similarly situated citizen defendant.

This claim is meritless.  Zhukov's counsel did, in fact, argue for a sentence reduction based on non-citizen status.  In Zhukov's sentencing memorandum, counsel emphasized that "as a foreign citizen, [Zhukov] is likely to have access to minimal or no programming that is available to other inmates, some of which can reduce the time a sentence is served."  Def.'s Sentencing Mem. 33.  The memorandum further identified RDAP as an example of such a program.  *Id.* at 33-34.  And it explicitly urged the Court to consider Zhukov's "lack of access to programming due to his status as a foreign national when imposing sentence."  *Id.* at 34.  Thus, Zhukov's argument that his counsel performed unreasonably at sentencing fails on its own terms.  *See, e.g., Benjamin v. United States*, 154 F. Supp.

13

3d 1, 7 (W.D.N.Y. 2016) (ineffective assistance claim suffered from "fatal, threshold flaw," in that "the arguments Petitioner claim[ed] his counsel should have made were in fact made").

### III. Compassionate Release

**A. Legal Standard**

A motion for compassionate release is governed by 18 U.S.C. § 3582(c)(1)(A). That provision allows a defendant to move for a reduced or modified sentence, "including release from prison, in federal district court after satisfying a statutory exhaustion requirement." *United States v. Fernandez*, 853 F. App'x 730, 731-32 (2d Cir. 2021); 18 U.S.C. § 3582(c)(1)(A). The court may then reduce the term of imprisonment if "extraordinary and compelling reasons warrant such a reduction," *and* if "the applicable [Section] 3553(a) factors weigh in favor of said reduction." *United States v. Johnson*, 671 F. Supp. 3d 265, 270 (E.D.N.Y. 2023) (citing 18 U.S.C. § 3582(c)(1)(A)). Zhukov bears the burden of showing he is entitled to compassionate release. *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992).

**B. Discussion**

Zhukov asks the Court (counterintuitively) to *add* a one-day term of supervised release to his sentence. In his view, this will functionally reduce his sentence, because it

14

will make him eligible for earned-time credits under the First Step Act.  *See* Def. Mot. for Compassionate Release 1-2.

But even if the Court were to modify Zhukov's sentence, he would remain ineligible for earned-time credits.  A non-citizen inmate is ineligible for earned-time credits if he is "the subject of a final order of removal."  18 U.S.C. § 3632(d)(4)(E)(i).  Courts have consistently held that an expedited order of removal qualifies as a "final order" for purposes of the bar on applying earned-time credits.  *See, e.g., Portocarrero-Valencia v. Warden, FCI Otisville*, No. 24-CV-6413, 2025 WL 670911, at *5 (S.D.N.Y. Feb. 28, 2025) (collecting cases); *Murillo-Cabezas v. FCI Otisville Warden*, No. 23-CV-11329, 2024 WL 3638331, at *2 (S.D.N.Y. Aug. 2, 2024) (same).  And Zhukov is subject to such an order.  *See* Expedited Order of Removal 5, ECF No. 458.  So, even if extraordinary and compelling circumstances existed for a sentence reduction (an issue the Court need not reach), Zhukov's proposed modification would not reduce his sentence.

Zhukov offers two responses, neither of which is persuasive.

First, he cites *Nasrallah v. Barr*, 590 U.S. 573 (2020), for the proposition that because he never appeared before an immigration judge, there is no final order for his removal.  Def. Reply in Supp. of Mot. for Comp. Release 2, ECF

15

No. 457. Nothing in *Nasrallah* so holds. That case involved the narrow question of whether a specific limitation on judicial review of a removal order also applies to judicial review of an order denying relief under the Convention Against Torture. 590 U.S. at 576. The Court was not asked to determine which officials may issue a final order of removal, and it did not purport to do so.

Second, Zhukov argues that because he never signed the expedited order of removal, it is not final. Def. Reply in Supp. of Mot. for Comp. Release 1. But he identifies no case, statute, or regulation for the proposition that a non-citizen may unilaterally block expedited removal simply by declining to sign the order authorizing such removal. Indeed, the underlying regulation states only that the non-citizen "shall sign the reverse of the [order] acknowledging receipt." 8 C.F.R. § 235.3((b)(2)(i). It does not say (or even imply) that without such an acknowledgment, the order is non-final or otherwise unenforceable. Furthermore, the case law makes clear that the actions of the *agency*, not the non-citizen, determine the finality of a removal order. *See Bhaktibhai-Patel v. Garland*, 32 F.4th 180, 194 (2d Cir. 2022) ("Congress [has] focused our attention on the agency's review proceedings as the decisive metric for determining the finality of a removal order.").

16

In sum, Zhukov is not eligible for earned-time credits under the First Step Act, because he is subject to a final order of removal. 18 U.S.C. § 3632(d)(4)(E)(i). Thus, granting his requested relief would (ironically) *increase*, not decrease, his sentence. The motion for compassionate release is denied.

### IV. Conclusion

For the foregoing reasons, Zhukov's motions to vacate his sentence and for compassionate release are denied.

SO ORDERED.

　　　　　　　　　　　　　　　　　/s/ Eric Komitee　　　　　
　　　　　　　　　　　　　　　　ERIC KOMITEE
　　　　　　　　　　　　　　　　United States District Judge

Dated:   July 17, 2025
         Brooklyn, New York

17